**Krista WESTENDORP; Douglas Westendorp; and Aaron Westendorp, by and through his parents and natural guardians Krista Westendorp and Douglas Westendorp, Plaintiffs,**

v.

**INDEPENDENT SCHOOL DISTRICT NO. 273 (EDINA, MN), Defendant.**

No. CIV. 4–96–642DSDJMM.

United States District Court, D. Minnesota.

June 1, 2000.

Michael S. Paulsen, University of Minnesota Law Center, Minneapolis, Daniel L. Bowles, C. Eric Hawes, Larkin, Hoffman, Daly & Lindgren, Bloomington, MN, and J. Matthew Szymanski, Gammon & Grange, McLean, VA, for plaintiffs.

Paul C. Ratwik, Nancy E. Blumstein, Ratwick Roszak & Maloney, Minneapolis, MN, for Independent School Dist. No 877, defendant.

Eric John Magnuson, Rider Bennett Egan & Arundel, Scott T. Anderson, Paul C. Ratwik, Nancy E. Blumstein, Ratwik, Roszak & Maloney, Minneapolis, MN, for ISD No. 273, defendant.

## ORDER

DOTY, District Judge.

This motion is before the court on (1) plaintiff's application for attorney's fees under 42 U.S.C. § 1988 and (2) defendant's motion to strike. Based on a review of the file, record, and proceedings herein, (1) plaintiff's application for attorney's fees is granted in the amount of $200,557.76 and (2) defendant's motion to strike is denied.

## BACKGROUND

The background of this case has been fully set forth in several of this court's prior orders and in two Eighth Circuit decisions, *Peter v. Wedl,* 155 F.3d 992 (8th Cir.1998), and *Peter v. Jax,* 187 F.3d 829 (8th Cir.1999). In July 1996, plaintiffs Krista Westendorp, Douglas Westendorp, and Aaron Westendorp, along with Joan Peter and Sarah Peter, brought an action under section 1983 against their school districts and the State of Minnesota, alleging violations of their constitutional rights under the First and Fourteenth Amendments, as well as under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400–1491(*o*), and state law. The case revolved around the validity of a Minnesota State Rule that prohibited school districts from providing special education services at private religious schools.

In March 1997, this court granted summary judgment against plaintiffs on their IDEA claim and denied their motion for preliminary injunction. Later in 1997, in the wake of the Supreme Court's decision in *Agostini v. Felton*, 521 U.S. 203, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997), which held that the Establishment Clause did not bar provision of publicly funded remedial services at religious schools, the state agreed to stop enforcing its rule and the Peters entered into a settlement agreement with their school district whereby the school district agreed to change its policy concerning the provision of paraprofessionals at religious schools.

However, the Westendorps' school district, Independent School District No. 273 (hereinafter "the school district"), refused to provide Aaron with a paraprofessional at the religious school he wanted to attend, arguing that it did not provide such services at any private school. The court thereafter denied the Westendorps' motion for preliminary injunction and granted summary judgment against the Westendorps' remaining constitutional and state law claims against the district. The Westendorps appealed and the Eighth Circuit reversed, reversing the court's grant of summary judgment and ruling in favor of the Westendorps on their IDEA claim and reversing the court's grant of summary judgment on the Westendorps' constitutional claims.[1] On remand, this court ordered the school district "to provide a classroom paraprofessional aide to Aaron Westendorp at the school chosen by his parents, whether public or private (including religious), for the equivalent of six academic years," thereby awarding the Westendorps all the relief they had sought in the litigation. With the agreement of the parties, the court entered judgment in the case.

The Westendorps have filed an application for attorney's fees under 42 U.S.C.

§ 1988, seeking an award of the reasonable fees and costs incurred in their litigation against the school district. The school district has filed papers opposing the application, as well as a motion to strike certain statements made by the Westendorps in connection with their application.

## DISCUSSION

### A. The Propriety of Plaintiff's Application for Attorney's Fees Under Section 1988

■ The court will first address the school district's contention that the fee application must be dismissed in its entirety. The school district argues that because the Westendorps prevailed only on their IDEA claim, and not on their constitutional claims under section 1983, they do not qualify for an award of attorney's fees under section 1988. As plaintiffs point out, however, this argument is flatly contradicted by controlling precedent. In *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), the Supreme Court held that a plaintiff is entitled to attorney's fees under section 1988 when he prevails on a federal statutory claim brought under section 1983. And in *Digre v. Roseville Schs. Ind. Dist. No. 623*, 841 F.2d 245 (8th Cir.1988), the Eighth Circuit expressly held that a plaintiff may properly "bring a section 1983 action based on alleged violations of the EHA," the predecessor statute to IDEA. *Id.* at 250. Thus, as these cases make clear, a successful IDEA claim provides a plaintiff with an appropriate basis for an award of attorney's fees under section 1988.

■ In its motion to strike, the school district retreats from the untenable position that a section 1988 fee award is not authorized in a section 1983 action where a plaintiff prevails only on his IDEA claim. The school district now argues that be-

1. At the same time, all plaintiffs in the original suit filed an application for attorney's fees against the state under 42 U.S.C. § 1988. The district court denied the application and the Eighth Circuit affirmed, holding (1) that

the plaintiffs were not prevailing parties against the state defendant and (2) that, even if the plaintiffs were considered prevailing parties against the state, special circumstances justified a denial of fees.

cause the Westendorps' initial complaint did not specifically allege IDEA as a basis for relief under section 1983, the Westendorps are foreclosed, on the basis of their own initial pleading decisions, from claiming attorneys fees under section 1988. However, this contention also ignores controlling Eighth Circuit precedent. In *Goss v. City of Little Rock*, 151 F.3d 861 (8th Cir.1998), the Eighth Circuit held that section 1988 "was intended to apply in any action for which § 1983 provides a remedy," even in those cases where the plaintiff has not explicitly pleaded a cause of action under section 1983. As the court reasoned:

"[T]he fact that a party prevails on a ground other than § 1983 does not preclude an award of attorney's fees under § 1988. If § 1983 would have been an appropriate basis for relief, then [the plaintiff] is entitled to attorney's fees under § 1988 even though relief was actually awarded on another ground."
... [I]n applying § 1988(b), we should focus on the substance rather than the form of plaintiff's case.

*Id.* at 866 (quoting *Consolidated Freightways Corp. v. Kassel*, 730 F.2d 1139, 1141–42 (8th Cir.1984)). *See also Monahan v. Nebraska*, 687 F.2d 1164, 1172 (8th Cir. 1982) ("Where a non-fee claim is joined with a non-frivolous claim under a statute providing for the award of fees, and the plaintiff prevails with respect to his non-fee claim, thus making it unnecessary for the Court to reach the § 1983 claim, an award of fees is nevertheless appropriate.").

In any event, the district's arguments about the alleged failure of the Westendorps properly to invoke sections 1983 and 1988 are largely academic. As the school district acknowledges, IDEA independently authorizes the award of attorney's fees to a prevailing IDEA litigant. *See* 20 U.S.C. § 1415(i)(3) ("In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorney's fees as part of the costs to the parents of a child with a disability who is the prevailing party."). And the Eighth

Circuit has consistently "analogized the IDEA attorneys' fees provisions to similar provisions of 42. U.S.C. § 1988." *John T. v. Marion Ind. Sch. Dist.*, 173 F.3d 684, 688 (8th Cir.1999). *See also Warner v. Ind. Sch. Dist. No. 625*, 134 F.3d 1333, 1337 (8th Cir.1998) ("Decisions construing [terms appearing] in ... § 1988, 'are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'") (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). Thus, whatever analytical approach one takes, there is no question that a fee application under section 1988 is the appropriate legal vehicle for determining the issue of attorney's fees in this case. The court will therefore turn to the merits of the application.

### B. Merits of the Fee Application

#### 1. Standard for Determining Fees Under Section 1988

Section 1988 states that "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee." Under the standard articulated by the Supreme Court, "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111–12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992).

Once the court finds that a plaintiff has achieved prevailing party status, the court must determine his reasonable attorney's fees. The court begins by ascertaining the "lode star" amount, calculated by multiplying the reasonable number of hours worked by counsel by a reasonable hourly rate for that attorney's services. *See Hensley*, 461 U.S. at 433, 103 S.Ct. 1933. A party seeking an award of fees must submit evidence supporting the hours worked and rates claimed, and where the documentation of hours is inadequate, the district court may reduce the award ac-

cordingly. *See id.* Hours that were not "reasonably expended" should also be excluded. *See id.* at 434, 103 S.Ct. 1933. In determining what constitutes a "reasonable hourly rate," the court must consider the "'ordinary fee for similar work in the community.'" *Baufield v. Safelite Glass Corp.,* 831 F.Supp. 713, 721 (D.Minn.1993) (quoting *Gopher Oil Co., Inc. v. Union Oil Co. of California,* 757 F.Supp. 998, 1008 (D.Minn.1991), *remanded in part,* 955 F.2d 519 (8th Cir.1992)).

In calculating a reasonable fee, the court may also consider a number of other factors: (1) the time and labor required; (2) the novelty or difficulty of the issues; (3) the skill required of the attorney to properly perform legal services; (4) preclusion of other employment due to acceptance of the case; (5) the attorney's customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the experience, reputation, and ability of the attorney; (9) the undesirability of the case; (10) the nature and length of the professional relationship with the client; and (11) awards in similar cases. *See Zoll v. Eastern Allamakee Community School Dist.,* 588 F.2d 246, 252 n. 11 (8th Cir.1978). Finally, the court must consider the success achieved by plaintiff. As the Eighth Circuit has stated, the "most important factor in determining what is a reasonable fee is the magnitude of the plaintiff's success in the case as a whole." *Jenkins v. Missouri,* 127 F.3d 709, 716 (8th Cir.1997).

### 2. Reasonableness of the Fee Request in this Case

█ Here, there can be no dispute that the Westendorps have prevailed completely in their lawsuit against the school district. At the start of the litigation, the school district refused to provide a paraprofessional to Aaron Westendorp at a private religious school, contending that neither the Constitution nor federal statute required such an accommodation. By the time the court entered judgment in this case, the Eighth Circuit had sustained the Westendorps' constitutional and IDEA claims against the school district and this court had ordered that the school district provide Aaron with a paraprofessional at the school of the family's choice for the remainder of his K–12 education, thereby granting the Westendorps all the relief they sought in the litigation. Thus, under the standard articulated in *Farrar v. Hobby,* the Westendorps' success on the merits of their claims "materially altered the legal relationship between the parties" in a way that directly benefitted them.

In their application, the Westendorps request that the court award them $213,902.76 in attorney's fees. Specifically, the Westendorps request $111,450 for the work done by their lead counsel, Professor Michael Paulsen, on the pre-appeal litigation in district court. This amount is determined by totaling all hours expended on the pre-appeal district court litigation, then reducing all hours incurred through August 4, 1997 by 20 percent (to account for possible overlap of time attributable to the presence of co-defendants), and then further applying a 10 percent voluntary reduction to all pre-appeal work. The adjusted figure, 445.8 hours, is then multiplied by Paulsen's then-applicable hourly rate of $250. The Westendorps also request $64,742.76 for the successful merits appeal against the school district. The bulk of this figure is derived by multiplying the hours expended by Paulsen in the briefing, preparation for oral argument, and argument of the appeal, multiplied by an hourly rate of $300, which Paulsen began charging in September 1998. The Westendorps then request $22,710 for the work performed by Paulsen in connection with the post-appeal proceedings on the merits: 75.7 hours at Paulsen's higher rate of $300. Finally, the Westendorps request $15,000 in fees Paulsen incurred in negotiating and litigating the fees issue: 97.7 hours of work performed by Paulsen at $300 per hour, reduced by 30 percent and then another 25 percent.

The school district challenges the reasonableness of the Westendorps' fee re-

quest. In a variation on its earlier arguments, the school district urges the court to award the Westendorps only for those hours that were devoted to their IDEA claim and only at the rate typically charged by Twin Cities lawyers in standard IDEA cases. Again, however, the district's position misapprehends both the practical realities of this case and the guiding legal precedent. As the school district is no doubt painfully aware, this was not a run-of-the-mill special education case. Rather, it was a procedurally complex civil rights case raising a host of difficult and interrelated constitutional and statutory issues, many of which were matters of first impression in the Eighth Circuit. While the court entered judgment in favor of the Westendorps only on their IDEA claim, by any practical measure plaintiffs also achieved excellent success on their constitutional claims. Not only did the Eighth Circuit reverse this court's order granting summary judgment in favor of the school district on the constitutional claims, but the reasoning of the Eighth Circuit's decision made it likely that, on remand, the Westendorps would have prevailed on the merits of these claims. *See Peter v. Wedl,* 155 F.3d 992, 997 (8th Cir.1998) ("Viewed in its entirety, the evidence in this case strongly suggests that [the school district's] policy is a mere pretext for religious discrimination."). That the Westendorps agreed not to pursue these constitutional claims does not mean that the claims lacked viability; it merely reflects how completely the Westendorps had prevailed on alternate legal grounds.

As the Eighth Circuit has recently stated, "the purpose of section 1988 is to encourage and reward the vindication of federal statutory and constitutional rights," *Wax 'N Works v. City of St. Paul,* 213 F.3d 1016, 1020 (8th Cir.2000), while at the same time "discourag[ing] unnecessary litigation," *Peter v. Jax,* 187 F.3d 829, 837 (8th Cir.1999). Given these statutory goals, it would be perverse for the court to penalize the Westendorps for being too successful on their federal statutory claim or for being too mindful of preventing unnecessary litigation. The cases are unequivocal on this point:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

*Hensley,* 461 U.S. at 435, 103 S.Ct. 1933 (citation omitted). *See also Jenkins,* 127 F.3d at 716 ("If the plaintiff has won excellent results, he is entitled to a fully compensatory fee award, which will normally include time spent on related matters on which he did not win.").

Further, the special expertise necessary to negotiate the difficult, and sometimes unmapped, legal terrain in this case easily justifies an hourly rate of $300, and unquestionably supports the $250 per hour rate charged by Professor Paulsen for the bulk of the work he performed in this case. As the affidavit testimony shows, these billing rates are commensurate with the rates charged by "highly-skilled attorneys in [the] Minneapolis–St. Paul market dealing with complex and specialized matters drawing on an attorney's areas of special expertise". Roger Magnuson Aff. at 3. *See also* Scott Johnson Aff. ("In my opinion, Professor Paulsen is an excellent attorney whose practice skills and expertise would ... command an hourly rate in the ranges appropriate for a highly experienced and highly skilled partner at a major Minneapolis or St. Paul firm."). Indeed, under the reasonableness factors listed above, the Westendorps have sub-

mitted virtually undisputed evidence demonstrating the following: (1) that this case involved novel and complex issues requiring the expenditure of considerable time and labor and a specialized knowledge of First Amendment law, statutory interpretation, and complex civil litigation; (2) that Professor Paulsen's time commitment to this case severely limited his availability for other litigation that likely would have provided compensation during the period in which the case was litigated; (3) that Paulsen's customary fee has been $300 per hour since September 1998 and was $250 per hour prior to that; (4) that the time limitations related to defendant's conduct were relevant to the litigation; (5) that Paulsen has an almost unsurpassed level of experience, reputation, and ability in the area of religious freedom litigation; (6) that, because of its difficulty, this case was unattractive even to seasoned litigators in this area; (7) that the Westendorps were extremely pleased with the quality of their legal representation throughout the three-year period of the litigation; and (8) that Paulsen himself received an attorney's fee award in 1997 at a rate of $250 per hour for work in a similar case and that other experienced attorneys have received upwards of $300 per hour in comparable religious freedom cases.

■ After carefully reviewing the billing records submitted by the Westendorps, the court concludes that an attorney's fee award of $200,557.76 is appropriate in this case. The court has reduced the requested award in two specific ways. First, it has disallowed the $4,500 claimed by the plaintiffs in connection with Professor Paulsen's work on the amicus brief in *Agostini v. Felton*, 521 U.S. 203, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) (25 hours multiplied by $250, with two voluntary reductions, one of 20 percent and one of 10 percent). The connection between Paulsen's work on *Agostini* and the Westendorps' success in this case is simply too attenuated to support reimbursement under section 1988. Second, the court has calculated Paulsen's work during the appeals stage of the merits litigation at his

then-applicable hourly rate of $250 (rather than his current rate of $300 per hour), thereby reducing plaintiffs' requested fees by another $8,845. However, the court believes that the remainder of the Westendorps' fee request is entirely reasonable. The court bases this conclusion on a number of factors, including: (1) the exceptional success obtained by plaintiffs' counsel; (2) the complexity and difficulty of the legal and procedural issues presented; (3) the length of the litigation; (4) the vigor of the defense put forth by the school district at all stages of the litigation; (5) the high degree of expertise and skill demonstrated by plaintiffs' counsel; (6) the detail and clarity of counsel's billing records; and (7) the substantial voluntary reductions already applied by the Westendorps.

### 3. Other Arguments in Opposition to the Fee Application

■ The school district makes two additional arguments in opposition to the Westendorps' fee application. First, the school district contends that it should be excused from paying attorney's fees because it relied on Minnesota State Rule 3424.1150, which at the beginning of the litigation prohibited the school district from providing a student paraprofessional services at a religious school. However, as the Eighth Circuit has recently explained,

> A prevailing party in a § 1983 suit "should ordinarily recover an attorney's fees unless special circumstances would render such an award unjust." According to Mr. Munch, the special circumstances in this case are that as a government official he is bound to follow state law .... The short answer is that governmental officials are not bound to follow state law when that law is itself unconstitutional. Quite the contrary: in such a case, they are bound not to follow state law. It is true that a prosecuting attorney may not know for certain whether a state law is valid or not, and that he may feel obliged to enforce the law until a determination as to its validi-

ty has been made. This, however, is not a special circumstance justifying the denial of the customary award of fees. Presumably it will always be true that state officials enforcing a law or otherwise defending state action will believe, or at least hope, that the law or action in question will be upheld against a federal constitutional attack. The point of § 1988 is that such officials proceed at their peril. If in fact they are wrong, and the law they are enforcing turns out to be invalid, § 1988 puts the financial burden on the state officials. The judgment of Congress is that the burden rests more properly on them than on the party who has been wronged by the application of an invalid law.

*Carhart v. Stenberg,* 192 F.3d 1142, 1152 (8th Cir.1999) (citation omitted). Thus, the school district's claim that it relied on state law when it violated the Westendorps' federal rights gives it no protection from an award of attorney's fees under section 1988. Indeed, the Eighth Circuit panel in this case has already indicated that "because it was the responsibility of the school district[ ] to provide the requested paraprofessional services," the school district is the appropriate defendant from whom to seek an award of attorney's fees. *Peter v. Jax,* 187 F.3d at 839.

Second, the school district argues that the Westendorps should be judicially estopped from claiming any fee that was also claimed by their counsel in the earlier fee litigation against the state defendants. The school district points to an exchange between plaintiffs' counsel and Magistrate Judge Mason during a hearing on the earlier fees issue, in which counsel stated that the fees being sought against the state were not related to the "Westendorp case that's on appeal." Transcript of Hearing (Feb. 20, 1998) at 47. This statement, however, is subject to several possible interpretations, the most plausible being that counsel was merely assuring the magistrate judge that his client was not asking the state for any fees associated with the pending appeal by the Westendorps. In any event, given the confused nature of the colloquy and the ambiguity of the comments made to the magistrate judge, the court cannot conclude that plaintiffs' counsel is now "tak[ing] a position that is clearly inconsistent with its earlier position" or that counsel has "demonstrate[d] an intent to play 'fast and loose' with the courts." *Hossaini v. Western Missouri Med. Ctr.,* 140 F.3d 1140, 1143 (8th Cir.1998). The doctrine of judicial estoppel is therefore not applicable to this case.

**C. The School District's Motion to Strike**

■ The school district brings a motion to strike statements contained in the Westendorps' reply memorandum suggesting that the school district misrepresented the law in its opposition brief. While the court might prefer that they had couched their criticisms in less provocative terms, the Westendorps were well within their rights to point out the school district's failure to discuss apparently controlling legal authority on the subject of attorney's fees. Accordingly, the school district's motion to strike will be denied.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Plaintiff's application for an award of attorney's fees under 42 U.S.C. § 1988 is granted in the amount of $200,557.76.

2. Defendant's motion to strike is denied.