# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2569
_____

Residential Funding Company, LLC

*Plaintiff - Appellee*

v.

Terrace Mortgage Company, a Georgia corporation

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis
_____

Submitted: March 12, 2013
Filed: August 7, 2013
_____

Before WOLLMAN, BYE, and COLLOTON, Circuit Judges.
_____

BYE, Circuit Judge.

Residential Funding Company, LLC ("Residential"), sued Terrace Mortgage Company ("Terrace"), alleging Terrace breached the parties' contract when it refused to repurchase thirteen loans Residential had purchased from Terrace. The district

court[1] granted Residential's motion for summary judgment. Terrace appeals and we affirm.

I

Terrace originates residential mortgage loans. On May 18, 1994, Terrace and Residential signed a contract which allowed Terrace to sell to Residential loans Terrace had originated. The contract incorporated the "Residential Funding Seller and Servicer Guides" ("Client Guide"). Appellant's App. 8. By signing the contract, Terrace acknowledged it had received and read the Client Guide and made the representations contained within it. Id. at 8-9.

The Client Guide contained the following important provisions:

1. "[Terrace] is fully liable for any misrepresentation or breach of warranty [in each loan Residential purchased from Terrace] regardless of whether [Terrace] or [Residential] actually had, or reasonably could have been expected to obtain, knowledge of the facts giving rise to such misrepresentation or breach of warranty." Id. at 337.

2. Each of the loans Terrace sells to Residential "is in compliance with . . . all representations, warranties, and requirements contained in this Client Guide." Id. at 341.

3. Each of the following events, among others, constitutes an Event of Default:
    a. "[Terrace] . . . breaches any of the representations, warranties, or covenants set forth in this Client Guide." Id. at 356.
    b. "The Borrower or any other person or entity involved in the Loan transaction or in its underwriting or documentation . . . has

---

[1]The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota.

-2-

made any false representation and/or has failed to provide information that is true, complete and accurate in connection with such transaction, whether or not [Terrace] was a party to or had knowledge of such misrepresentation or incorrect information." Id.

4. "If [Residential] determines that an Event of Default has occurred with respect to a specific Loan, [Terrace] agrees to repurchase the Loan and its servicing . . . within 30 days of receiving a repurchase letter or other written notification from [Residential]." Id. at 357 (emphasis removed).

5. "[Terrace] may appeal [Residential's] decision by providing any additional information or documentation it believes may affect [Residential's] determination. . . . [Residential] will in its sole discretion determine the validity of any appeal filed by [Terrace]. If [Residential's] decision remains firm following an appeal, [Terrace] shall repurchase the Loan and its servicing . . . within 10 days of notification by [Residential], in writing, that the appeal has been denied." Id. at 362.

6. "[Terrace] shall indemnify [Residential] from all losses, damages, penalties, fines, forfeitures, court costs and reasonable attorneys' fees, judgments, and any other costs, fees and expenses resulting from any Event of Default. This includes, without limitation, liabilities arising from (i) any act or failure to act, (ii) any breach of warranty, obligation, or representation contained in the Client Contract . . . ." Id. at 364 (emphasis removed).

7. "[Residential] is not required to demand repurchase within any particular period of time, and may elect not to require immediate repurchase. However, any delay in making this demand does not constitute a waiver by [Residential] of any of its rights or remedies." Id. at 358.

8. "[Residential] may waive any default by [Terrace] in the performance of [Terrace's] obligations hereunder and its consequences, but only by a written waiver specifying the nature and terms of such waiver."

-3-

Id. at 357. For some time, this arrangement served the parties quite well. When a loan repurchase issue arose, Residential and Terrace arranged a solution without resorting to the terms of the Client Guide. But when the real estate market worsened, so did the parties' relationship. Residential made more repurchase demands, and the parties were unable to negotiate a resolution.

In 2008, Residential demanded Terrace repurchase thirteen loans.[2] Terrace did not repurchase them. Residential then filed this suit in Hennepin County District Court in November 2009, alleging Terrace breached the contract and was required to indemnify Residential for the attorneys' fees and costs it incurred in pursuing the suit. Terrace removed the action to federal court. Residential moved for summary judgment on both counts. The district court granted Residential's motion. It concluded the Client Guide, which the contract incorporated, stated Terrace was solely responsible for misrepresentations and inaccuracies in the loans it sold to Residential and Residential was authorized to determine whether those misrepresentations and inaccuracies existed. Accordingly, Terrace was required to repurchase the thirteen loans at issue. Further, the district court found the contract plainly required Terrace to make Residential whole upon Residential's request and indemnify Residential for all attorneys' fees and costs. In a subsequent order, the court awarded Residential $193,332.10 in attorneys' fees and $16,575.57 in costs. Terrace then filed this timely appeal.

II

Terrace's arguments are legion. Briefly summarized, it contends the district court incorrectly (1) interpreted the contract to give Residential the authority to

_____

[2]Residential originally alleged Terrace failed to repurchase five additional loans, but the parties stipulated to a dismissal of Residential's claims regarding those loans.

determine whether Terrace breached parts of the Client Guide; (2) concluded Residential did not waive its right to insist Terrace repurchase loans, despite a non-waiver provision in the contract; (3) resolved several issues with respect to specific loans against Terrace; (4) concluded Residential adequately proved its damages; and (5) concluded Residential was entitled to attorneys' fees and expenses.

"We review a district court's grant of summary judgment de novo, viewing the facts in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences that can be drawn from the record." Marlowe v. Fabian, 676 F.3d 743, 746 (8th Cir. 2012). Summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To establish a genuine factual issue, a party "may not merely point to unsupported self-serving allegations." Anda v. Wickes Furniture Co., 517 F.3d 526, 531 (8th Cir. 2008) (internal quotation and citation omitted). "Instead, the [party] must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor." Id. (internal quotation and citation omitted).

A.      Breach of Contract

The district court concluded the contract, which incorporated the Client Guide, is the sole arbiter on the issue of the make-whole repurchase payments. In other words, Terrace cannot contract away judicial review by granting Residential the exclusive right to determine an "Event of Default" has occurred, only to later ask a court to independently review Residential's determination. According to the district court, the only issues it could review were (1) whether Residential notified Terrace an Event of Default had occurred, thereby obligating Terrace to repurchase the loan; and (2) whether Terrace refused to honor its obligation. Terrace asserts this interpretation of the contract is erroneous for several reasons.

-5-

First, Terrace argues the district court's interpretation renders most of the contract surplusage. If Residential can demand repurchase at its whim and leave Terrace without recourse, why bother to include the several hundred pages of warranties and representations in the Client Guide? Terrace's view is, instead, the contract provisions are mere conditions precedent—events which must occur before Residential may file suit in court and ask a judge or jury to determine whether Terrace has breached a representation or warranty.

We look to Minnesota law to decide this diversity case. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). When interpreting a contract, Minnesota courts attempt to determine the intent of the parties, Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc., 666 N.W.2d 320, 323 (Minn. 2003), and they determine the parties' intent from the language of the contract. Savela v. City of Duluth, 806 N.W.2d 793, 796 (Minn. 2011) (quotation and citation omitted). "A contract is ambiguous if, based upon its language alone, it is reasonably susceptible of more than one interpretation." Art Goebel, Inc. v. N. Suburban Agencies, Inc., 567 N.W.2d 511, 515 (Minn. 1997). If contract language is unambiguous, "courts should not rewrite, modify, or limit its effect by a strained construction." Travertine Corp. v. Lexington-Silverwood, 683 N.W.2d 267, 271 (Minn. 2004). Terrace asks us to do just that. The Client Guide gives Residential "sole discretion" to determine whether an Event of Default has occurred, Appellant's App. at 321, and Terrace agreed to buy back the loan if Residential determined as much. Id. at 357. There is nothing ambiguous about this language. Minnesota law does not permit us to entertain Terrace's strained reading of the contract.

Second, Terrace argues Residential behaved during litigation as if it needed to prove to the court the violations of the warranties in the Client Guide. Residential pled violations in its complaint, took depositions, and dropped its repurchase demands on five loans. According to Terrace, if Residential could simply demand repurchase and Terrace would have to comply, Residential would not have needed to

-6-

employ this litigation strategy.[3]  This argument meets the same fate.  Terrace identifies no ambiguity in the language of the contract which would permit us to look beyond its plain language.  Even if we were entitled to do so, Terrace presents no support for its claim that litigation conduct is a more revealing source of the contracting parties' intent than the language of the contract itself.

Finally, Terrace claims the on-demand repurchase provision makes the contract unenforceable for lack of consideration.  We disagree because Residential paid a premium for the loans Terrace sold it in exchange for Terrace underwriting loans that met Residential's requirements, as described in the Client Guide.  That is sufficient consideration to support the agreement.  See Cederstrand v. Lutheran Brotherhood, 117 N.W.2d 213, 220 (Minn. 1962) (defining consideration as a contractual promise resulting from "the voluntary assumption of an obligation by one party upon condition of an act or forbearance by the other"); Gunhus, Grinnell v. Engelstad, 413 N.W.2d 148, 153 (Minn. Ct. App. 1987) ("Minnesota follows the long-standing principle a court will not examine the adequacy of consideration as long as something of value has passed between the parties." (citing Estrada v. Hanson, 10 N.W.2d 233, 225-26 (Minn. 1943))).

Although Terrace does not say so explicitly, it appears to argue that the on-demand repurchase provision makes the contract unconscionable.  In Minnesota, an unconscionable contract is one which "'no man in his senses and not under delusion would make on the one hand, and . . . no honest and fair man would accept on the other.'"  In re Estate of Hoffbeck, 415 N.W.2d 447, 449 (Minn. Ct. App. 1987)

---

[3]Residential invites us to dispense with Terrace's argument because it relies on parol evidence.  This is incorrect because parol evidence refers only to agreements made "prior to or contemporaneous with the execution of a written instrument." Hous. and Redev. Auth. for City of Minneapolis v. First Ave. Realty Co., 133 N.W.2d 645, 648 (Minn. 1965).  Of course, Residential's litigation tactics took place after the parties signed the contract.  Thus, the parol evidence rule does not apply.

(quoting Hume v. United States, 132 U.S. 406, 411 (1889)). "To establish unconscionability, a party must demonstrate that it had no meaningful choice but to deal with the other party and to 'accept the contract as offered.'" Sports & Travel Mktg., Inc. v. Chi. Cutlery Co., 811 F. Supp. 1372, 1380 (D. Minn. 1993) (applying Minnesota law) (quoting RJM Sales & Mktg., Inc. v. Banfi Prods. Corp., 546 F. Supp. 1368, 1375 (D. Minn. 1982)).

Initially, we observe one court has rejected an unconscionability argument directed at nearly identical contract language. See HSBC Mortg. Servs., Inc. v. Equisouth Mortg., Inc., 873 F. Supp. 2d 923, 928-29 (N.D. Ill. 2012) (concluding a contract provision giving a mortgage buyer the exclusive right to determine a breach of warranty existed and demand repurchase upon such a determination was not unconscionable). Furthermore, we emphasize this was a freely negotiated agreement between two sophisticated parties. Terrace obtained the ability to sell mortgages to Residential at its choosing, and Residential was bound to purchase them. The agreement protected both parties: Terrace was not obligated to sell mortgages which did not comply with the representations and warranties in the Client Guide, Shortridge Dep. 331:14-18, Appellee's App. 83, and Residential obtained the ability to demand repurchase if the mortgages were not in compliance. Appellant's App. 357. Terrace willingly agreed to place itself in this situation and acknowledged that it is experienced regarding the transactions described in the Client Guide, had the opportunity to obtain advice from able counsel, and made its own independent decision to enter into the contract. Id. at 318. Indeed, the agreement served the parties well for many years. We decline to deem a voluntary, negotiated contract unconscionable merely because the parties' relationship has soured. See Metro. Sports Facilities Comm'n v. Gen. Mills, Inc., 470 N.W.2d 118, 125 (Minn. 1991) ("These sophisticated parties, presumably with the assistance of experienced and able counsel, exercised their liberty of contract and now are accountable for the product of their negotiations."); cf. Sterling Capital Advisors, Inc. v. Herzog, 575 N.W.2d 121, 124-26 (Minn. Ct. App. 1998) (rejecting the argument that a contract provision

which gave stockholders of a bank holding company "sole discretion" to accept or reject purchase offers made the contract illusory).

Nor did Residential act in bad faith. Minnesota courts imply a covenant of good faith in every contract which requires one party not to unjustifiably hinder the performance of another party. In re Hennepin Cnty. 1986 Recycling Bond Litig., 540 N.W.2d 494, 502 (Minn. 1995). The parties agree the good faith covenant applies in this case. Appellant's Br. at 37 n.1 ("[I]f the demand and appeal provisions were construed to give [Residential] discretion to unilaterally demand repurchase of loans, Minnesota law would imply a covenant of good faith on [Residential]."); Oral Argument at 24:10-24:30 (Mar. 12, 2013), available at http://media.ca8.uscourts.gov/cgi-bin/oaByCase.pl?caseno=12-2569&getOA=Search (agreement by counsel for appellee). "'Bad faith' is defined as a party's refusal to fulfill some duty or contractual obligation based on an ulterior motive . . . ." Herzog, 575 N.W.2d at 125. Residential did nothing of the kind. Instead, it did exactly what the contract allowed it to do—determine an Event of Default had occurred and demand Terrace repurchase the loans. "A party to a contract 'does not act in bad faith by asserting or enforcing its legal and contractual rights.'" Id. (quoting Burgmeier v. Farm Credit Bank, 499 N.W.2d 43, 50 (Minn. Ct. App. 1993)). To the extent Terrace argues Residential acted in bad faith, its claim fails.

B.     Waiver

The Client Guide provides that any delay Residential demonstrates in making a repurchase demand does not constitute a waiver of its right to still demand repurchase. Appellant's App. 358. Residential may only waive an Event of Default in writing. Id. at 357. Although Residential never sent such a writing, Terrace nevertheless argues Residential waived its right to demand repurchase through its course of conduct before and during this litigation. Specifically, Terrace points to the

parties' history of finding informal solutions to breach of warranty issues, as well as the same litigation conduct discussed above.

"Waiver is the intentional relinquishment of a known right." Frandsen v. Ford Motor Co., 801 N.W.2d 177, 182 (Minn. 2011). The party alleging waiver must present evidence which shows (1) knowledge of the right, and (2) intent to waive that right. Stephenson v. Martin, 259 N.W.2d 467, 470 (Minn. 1977). Intent to waive may be inferred from conduct, id., but Minnesota courts will not find waiver absent a clear intention to do so, or facts from which waiver is necessarily implied. Clark v. Dye, 197 N.W. 209, 226 (Minn. 1924). Waiver is an affirmative defense, Swanson v. Domning, 86 N.W.2d 716, 723 (Minn. 1957), and as the party asserting the defense, Terrace has the burden of proving it. MacRae v. Grp. Health Plan, Inc., 753 N.W.2d 711, 716 (Minn. 2008). "Waiver generally is a question of fact . . . ." Valspar Refinish, Inc. v. Gaylord's, Inc., 764 N.W.2d 359, 367 (Minn. 2009).

Terrace correctly notes "the mere presence of a nonwaiver clause does not automatically bar a waiver claim." Pollard v. Southdale Gardens of Edina Condominium Ass'n, Inc., 698 N.W.2d 449, 453 (Minn. Ct. App. 2005). But assuming Residential knew about its right to demand repurchase, Terrace simply presents no evidence that Residential intended to waive that right. See Ill. Farmers Ins. Co. v. Glass Serv. Co., 683 N.W.2d 792, 799 (Minn. 2004) (declining to infer waiver by course of conduct given contract language to the contrary). Indeed, the hallmarks of waiver are absent here. For one thing, Residential had no reason to waive its right to demand repurchase. "In cases in which waiver through conduct is found, the waiving party generally has an incentive to relinquish a contractual right." BFI Waste Sys. of N. Am., L.L.C. v. Freeway Transfer, Inc., 867 F. Supp. 2d 1037, 1044 (D. Minn. 2012) (applying Minnesota law). Here, Residential had no such incentive to waive a highly advantageous contractual provision. Nor has Residential acted contrary to the terms of the contract. See Valspar Refinish, Inc., 764 N.W.2d at 367 ("When a party acts in a way that is inconsistent with the terms of a contract,

-10-

a fact finder can reasonably conclude that a party waived those contractual provisions."). Nothing in the Client Guide *requires* Residential to demand repurchase upon the discovery of an Event of Default. Residential's history of working out an informal resolution to breach of warranty issues is therefore not *contrary* to the terms of the contract; it is merely declining the option to pursue a remedy for which the contract allows. And it was Terrace's refusal to comply with Residential's repurchase demand that led Residential to pursue litigation in the first place. Residential's litigation preparation does not evidence an intent to waive. Terrace's argument is without merit.

Terrace also makes waiver arguments with respect to two individual loans. We analyze these arguments below.

### 1. Wilson Loan

The Wilson loan was a "stated income loan," meaning the lender would not verify the amount of monthly income the prospective applicant claimed on his or her loan application. When it learned Wilson had overstated her income in violation of the Client Guide, Appellant's App. 356, 469, Residential demanded Terrace repurchase the loan. Terrace claims in the first decade of the parties' relationship, Residential never demanded repurchase of a "stated income loan" and therefore waived the right to do so. This argument suffers from the same defect as Terrace's general waiver argument, discussed immediately above. Terrace evidenced no intent to waive its right to demand repurchase. We reject this claim without further analysis.

### 2. Almeida Loan

Residential demanded Terrace repurchase a loan Terrace made to Julio Almeida and later sold to Residential. The terms of the loan specified Almeida would occupy the house he owned and financed with the loan. Yet shortly after Terrace

made the loan, Almeida told Homecomings Financial, LLC, the company Residential hired to service the loan, that he was not living at the property, and asked that mail regarding the loan be sent to a different address. Misrepresenting that a property is one's primary residence is an Event of Default. Appellant's App. 356, 371. Terrace claims Residential knew of this Event of Default but did not notify Terrace of it for nearly two years, derogating its obligation under the contract. Id. at 446. This delay, Terrace argues, constitutes a waiver of Residential's right to demand repurchase, as well as a "prior breach" excusing Terrace's obligation to perform its end of the bargain. See Space Ctr., Inc. v. 451 Corp., 298 N.W.2d 443, 451 (Minn. 1980) ("[A] repudiating party cannot set up the other party's subsequent nonperformance or a breach to avoid liability for its own prior total breach.").

Here again, we are not persuaded. Terrace presents no evidence that Homecomings, a loan servicer and legally separate entity from Residential, was required to and actually did inform Residential that Almeida was not living in his owner-occupier-designated property.[4] In other words, there is no evidence Residential knew an Event of Default existed but chose not to act on it. For this reason, Terrace's waiver and prior breach arguments cannot succeed.

---

[4]In its brief, Terrace makes the conclusory assertion Homecomings was Residential's agent. Appellant's Br. 41. Although Terrace stated Homecomings was an "affiliate" of Residential, see Resp. to Mot. for Summ. J. 9 n.3, Terrace did not argue Residential and Homecomings had a principal-agent relationship in the district court, and we decline to review its contention for the first time here. See First Union Nat'l Bank ex rel. Se. Timber Leasing Statutory Trust v. Pictet Overseas Trust Corp., 351 F.3d 810, 816 (8th Cir. 2003) ("[W]e do not normally consider issues which the district court did not rule upon . . . .").

C.    Other Specific Loans

    1.    Altmeyer Loan

    Residential demanded Terrace repurchase a loan made to Lawrence and Sandra Altmeyer due to undisclosed debts on their mortgage application. Failure to fully disclose pre-existing debts is an Event of Default and breaches the Client Guide. Appellant's App. 356, 463. To substantiate its demand, Residential relied on four prior mortgage agreements bearing the Altmeyers' names. Terrace argues, as it did before the district court, that these mortgage agreements do not show the balance of the debts on the day the Altmeyers applied for the loan presently at issue. Because it is possible the Altmeyers paid off their mortgage debt, Terrace claims, Residential's demand is based on "pure speculation." Appellee's Br. 15.

    We cannot review this argument. It is undisputed Residential determined an Event of Default existed and properly notified Terrace of the Event. Terrace did not independently investigate Residential's claim, Shortridge Dep. 233:17-21, Appellee's App. 59, and has not repurchased the loan. To inquire further by reviewing the validity of Residential's Event of Default determination is to contradict unambiguous contract language. Minnesota law does allow such an inquiry. Travertine Corp., 683 N.W.2d at 271.

    2.    Simms Loans

    Residential demanded Terrace repurchase two loans issued to finance two separate pieces of property because the original appraisals improperly inflated the value of the properties, in violation of the Client Guide. Appellant's App. 347, 356, 492. Residential employed the services of Meredith Herring, a professional appraiser, who reviewed the initial appraisals and concluded they overvalued the properties. Terrace takes issue with several aspects of Herring's testimony, including (1) she was

paid to testify; (2) she begins with the premise there is a problem with an initial appraisal when reviewing that appraisal; (3) she had no knowledge of the interior of each property she reviewed; and (4) she spent insufficient time evaluating one of the properties. Terrace also contends Residential did not comply with the requirements of Georgia law when it attempted to recover a deficiency following the foreclosure of the two property interests.

Terrace's objection to Herring's testimony ultimately concerns the validity of Residential's determination an Event of Default had occurred, and therefore, we again decline to review it. As for its claim regarding the deficiency, Terrace identifies nothing in the Client Guide which requires Residential to comply with local law when pursuing a deficiency, nor does it identify any provision stating non-compliance with local law terminates Residential's right to demand repurchase. Terrace's arguments are of no moment.

D.    Damages

Terrace argues the documents on which Residential relies to prove its damages are hearsay. Residential responds, and the district court concluded, that the documents satisfy the so-called business records exception to the rule against hearsay. See Fed. R. Evid. 803(6).

Whether evidence is hearsay is a decision for the court; it is not a "fact issue," as Terrace states. See id. 104(a) (stating preliminary questions regarding the admissibility of evidence are to be decided by the court). We review the district court's evidentiary rulings for a clear and prejudicial abuse of discretion. Chism v. CNH Am., L.L.C., 638 F.3d 637, 640 (8th Cir. 2011).

-14-

Federal Rule of Evidence 803(6) allows the introduction of business records

> made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the . . . record . . . all as shown by the testimony of the custodian or other qualified witness.

Terrace identifies alleged inconsistencies regarding the date on which the records were made in the affidavits of John Larson, an employee of GMAC Mortgage, LLC (GMACM), the entity which oversaw Residential's loan repurchase operations. Terrace also argues it is not clear the damages records were prepared by Residential, as opposed to GMACM.[5]

We are not persuaded by Terrace's attempt to construct an inconsistency in the record regarding when the damages records were created. Melisa Simons, a Repurchase Risk Analyst at Residential, created eleven of the thirteen records at issue. Larson Aff. ¶ 5, Appellant's App. 19. Larson prepared the final two when Residential transferred its repurchase operations to GMACM and Larson assumed Simons's duties. Id.; Larson Supp. Aff. ¶ 4, Appellant's App. 690. In his supplemental affidavit, Larson stated, "[a]ll of these records were made at or near the time of the occurrence of the underlying matter by a person with knowledge of the matters." Larson Supp. Aff. ¶ 2, Appellant's App. 689. We take this statement to mean Simons created eleven records shortly after Residential's repurchase demands on eleven mortgages, and Larson did the same with respect to the other two. Nothing about this statement is ambiguous or contradicts Larson's original affidavit.

---

[5]Terrace also alleges some uncertainties regarding Residential's interest calculations. Terrace did not make this argument in the district court, so we decline to review it. Pictet Overseas Trust Corp., 351 F.3d at 816.

Terrace's argument disputing the creator of the records is also meritless. We have held a record created by a third party and used as part of another entity's records meets the business records exception, so long as the entity relied on the accuracy of that record and the remaining requirements of Rule 803(6) are met. Brawner v. Allstate Indem. Co., 591 F.3d 984, 987 (8th Cir. 2010). It is undisputed Residential relied on the accuracy of the records Simons and Larson prepared. Moreover, those records clearly meet the requirements of Rule 803(6). Larson stated he had access to all of Residential's and its servicers' accounting and business documents and has since verified the accuracy of Residential's damages calculations using those documents. Larson Aff. ¶¶ 4-5, Appellant's App. 18-19. There can be no dispute Simons and Larson had the personal knowledge required to make the records. Nor does Terrace contest Larson's statement the records were made in the course of regularly conducted business activity at Residential and GMACM. And as discussed above, the records were made at or near the time of the repurchase demands. The requirements of Rule 803(6) are satisfied. Assuming Terrace is correct to say the records at issue were made by GMACM and not Residential, the district court did not abuse its discretion when it concluded Residential could rely on those records.

E.     Attorneys' Fees and Costs

Finally, Terrace argues it should not have to indemnify Residential for all its fees and expenses, as the Client Guide requires. Appellant's App. 364. According to Terrace, Minnesota law allows a party to recover only the fees it necessarily incurred in pursuing its claims. Appellant's Br. 52 (citing Westendorp v. Indep. Sch. Dist. No. 273, 131 F. Supp. 2d 1121, 1127 (D. Minn. 2000)). If the district court's interpretation of the contract were correct, Terrace argues, then Residential needlessly took several depositions and wrote an overly long summary judgment brief. Terrace should not have to indemnify Residential for these unnecessary expenses.

Terrace is wrong.  First, <u>Westendorp</u> is easily distinguishable.  The damages claim there was brought pursuant to 42 U.S.C. § 1988, a federal statute intended to "encourage and reward the vindication of federal statutory and constitutional rights." <u>Wax 'N Works v. City of St. Paul</u>, 213 F.3d 1016, 1020 (8th Cir. 2000).  There are no federal statutes or constitutional claims involved in this case.  The only governing language is the contract the parties signed.  <u>Westendorp</u> does not apply.  Second, the contract unambiguously provides fees to Residential "without limitation." Appellant's App. 364.  The kind of "reasonableness" argument for which Terrace grasps is not present in the language of the contract.  As with the other disputed issues in this case, the district court correctly relied on the language of the contract that these parties freely signed.  The court did not err in its calculation of Residential's attorneys' fees and costs.

III

We affirm the judgment of the district court.

_____