# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-1311
_____

Jet Midwest International Co., Ltd

*Plaintiff - Appellant*

v.

Jet Midwest Group, LLC

*Defendant - Appellee*

Paul Kraus; Karen Kraus; F. Paul Ohadi; F. Paul Ohadi Trust; Kenneth M. Woolley; Jet Midwest Inc.

*Defendant*s

_____

Appeal from United States District Court
for the Western District of Missouri - St. Joseph

_____

Submitted: June 11, 2019
Filed: August 2, 2019

_____

Before GRUENDER, ARNOLD, and STRAS, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Jet Midwest International Co., Ltd. sued Jet Midwest Group, LLC ("JMG") for breaching a loan agreement. The district court granted summary judgment to Jet Midwest International, which then moved for the reimbursement of its attorneys' fees under the agreement. The district court denied the motion, and Jet Midwest International appeals.

Before addressing the merits of this appeal, we must first ensure the existence of subject-matter jurisdiction.[1] We review subject-matter jurisdiction *de novo*. *Slater v. Republic-Vanguard Ins. Co.*, 650 F.3d 1132, 1134 (8th Cir. 2011).

Subject-matter jurisdiction in this case is based on diversity of citizenship. Diversity jurisdiction "requires an amount in controversy greater than $75,000 and complete diversity of citizenship among the litigants." *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007) (citing 28 U.S.C. § 1332(a)). Complete diversity "exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship." *Id.* For purposes of establishing diversity jurisdiction, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Only corporations are entitled to this treatment under § 1332. *GMAC Commercial Credit LLC v. Dillard Dep't Stores, Inc.*, 357 F.3d 827, 828-29 (8th Cir. 2004) (citing *Carden v. Arkoma Assocs.*,

---

[1] After JMG raised the issue of subject-matter jurisdiction in its response brief on appeal, Jet Midwest International moved for leave to file a supplemental appendix addressing jurisdiction. JMG then moved to file a supplemental brief responding to the jurisdictional arguments in Jet Midwest International's reply brief. Each party opposes the other's motion. While JMG did not dispute the existence of subject-matter jurisdiction until appeal, we have an obligation to consider both our jurisdiction and that of the district court. *Robins v. Ritchie*, 631 F.3d 919, 924 (8th Cir. 2011). Thus, we grant both motions.

494 U.S. 185, 186, 189, 195-96 (1990)). The citizenship of non-incorporated entities like limited liability companies depends on the citizenship of their members. *Id*.

JMG is a limited liability company whose members are citizens of various U.S. states. Jet Midwest International is a Hong Kong limited company with a principal place of business in Beijing. On appeal, JMG contends that Jet Midwest International's failure to establish the citizenship of its members means we must dismiss the case for lack of subject-matter jurisdiction. JMG argues that if a foreign legal entity like Jet Midwest International is not expressly called a corporation, it cannot be treated as such under § 1332. Jet Midwest International counters that a Hong Kong limited company is a corporation under § 1332 and therefore a citizen of China for jurisdictional purposes.

While our circuit has not addressed the citizenship of a Hong Kong limited company, we adopt the approach employed by the Seventh Circuit for considering the citizenship of foreign entities. As the Seventh Circuit has noted, deciding whether a foreign company should be treated as a corporation under § 1332 is a difficult task. *Fellowes, Inc. v. Changzhou Xinrui Fellowes Office Equip. Co.*, 759 F.3d 787, 788 (7th Cir. 2014); *White Pearl Inversiones S.A. (Uruguay) v. Cemusa, Inc.*, 647 F.3d 684, 686 (7th Cir. 2011). To account for linguistic and other differences between domestic and foreign business laws and the fact that other nations do not necessarily call entities that are in effect corporations by that name, a court examines whether the foreign entity is "equivalent in all legally material respects to a corporation under state law." *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003). The court treats a foreign legal entity as a corporation if it has "the standard elements of 'personhood' (perpetual existence, the right to contract and do business in its own name, and the right to sue and be sued)," as well as the ability to "issue[] shares to investors who enjoy limited liability" and which "can be bought and sold, subject to restrictions that the business declares." *BouMatic, LLC v. Idento Operations, BV*, 759 F.3d 790, 791 (7th Cir. 2014).

Drawing on several cases that have conducted the necessary analysis under the Seventh Circuit framework, we conclude that a Hong Kong limited company is equivalent to a U.S. corporation under § 1332. *See Superl Sequoia Ltd. v. Carlson Co.*, 615 F.3d 831, 832 (7th Cir. 2010) (stating that a Hong Kong business organization "limited by shares" is "a status in the Commonwealth of Nations that is equivalent to a corporation in the United States"); *Flextronics Int'l USA, Inc. v. Sparkling Drink Sys. Innovation Ctr. Ltd*, 186 F. Supp. 3d 852, 861 (N.D. Ill. 2016) (concluding that Hong Kong limited companies should be treated as corporations under § 1332); *Shanshan Shao v. Beta Pharma, Inc.*, No. 3:14-cv-01177(CSH), 2018 WL 1882855, at *4 (D. Conn. Apr. 19, 2018) (reviewing cases). As a result, there is complete diversity between JMG, whose members are citizens of U.S. states, and Jet Midwest International, which is a citizen of China. Thus, the district court properly exercised subject-matter jurisdiction under § 1332, and we have appellate jurisdiction under 28 U.S.C. § 1291.

Turning to the merits, we review *de novo* the interpretation of an attorneys' fees provision in a contract. *John T. Jones Const. Co. v. Hoot Gen. Const. Co.*, 613 F.3d 778, 786 (8th Cir. 2010). Section 9.2 of the parties' loan agreement sets out JMG's obligation to pay Jet Midwest International's costs and expenses incurred in preparing and enforcing the loan agreement:

> Borrower agrees to pay on demand all costs and expenses in connection with the preparation, execution, delivery, filing, recording, and administration of any of the Loan Documents, including the reasonable fees and out-of-pocket expenses of counsel for Lender, with respect to the items noted above and with respect to advising Lender as to its rights and responsibilities under any of the Loan Documents; provided, however, that Borrower's payment obligations in this sentence shall not exceed, and shall be capped at, $20,000. Borrower agrees to pay on demand all costs and expenses, if any, in connection with the enforcement of any of the Loan Documents.

Section 9.8 provides that Hong Kong law governs the interpretation of the loan agreement.

In denying Jet Midwest International's motion for attorneys' fees, the district court observed that Section 9.2 expressly mentions "reasonable fees" of counsel in connection with *preparing* the agreement but omits "reasonable fees" of counsel in connection with *enforcing* it. The district court reasoned that the parties therefore did not intend for Jet Midwest International to recover attorneys' fees incurred in enforcing the agreement. The district court also rejected Jet Midwest International's argument that governing Hong Kong law dictates that costs include attorneys' fees. The district court followed the American Rule, under which the parties pay their own fees and expenses, rather than the English Rule, under which the losing party pays the fees and expenses of the prevailing party. *See Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 875-76 (8th Cir. 1994).

We disagree with the district court's interpretation of the agreement. Section 9.2 provides that JMG agrees to pay Jet Midwest International "all costs and expenses" for both preparing and enforcing the loan agreement. Despite differences in wording between the two sentences at issue in Section 9.2, we conclude that the phrase "all costs and expenses" should be construed consistently in both cases as including attorneys' fees. *See* 11 *Williston on Contracts* § 32.6 (4th ed. 2019) ("Generally, a word used by the parties in one sense will be given the same meaning throughout the contract in the absence of countervailing reasons."). The use of the sweeping language "*all* costs and expenses" reflects the parties' intent that JMG would pay Jet Midwest International's attorneys' fees and other costs for enforcing as well as preparing the agreement. *See Baltimore Nat. Bank v. State Tax Comm'n of Md.*, 297 U.S. 209, 212 (1936) ("In such a situation the burden is heavily on the suitor who would subject the word 'all' with its uncompromising generality to an unexpressed exception."). If the parties intended to include attorneys' fees in one case and not the other, they would not have used the categorical "all" in both cases

and instead more carefully delineated the types of costs and expenses that are recoverable in each context.

Moreover, Jet Midwest International provides a compelling explanation for why the agreement distinguishes preparation costs from enforcement costs. Because they are relatively predictable, the agreement caps preparation costs and expenses at $20,000. It provides no such cap for the more unpredictable enforcement costs and expenses. Likewise, Jet Midwest International offers a convincing reason why the agreement expressly mentions "reasonable fees and out-of-pocket expenses of counsel" in the first sentence concerning preparation but not the second sentence concerning enforcement. It explains that under Hong Kong law the parties expected Jet Midwest International to receive litigation costs such as attorneys' fees incurred in enforcing the agreement. But the parties had no such expectation for the transaction costs incurred in preparing the agreement and thus specified that those costs and expenses include attorneys' fees and out-of-pocket expenses.

Finally, it is unclear what costs and expenses would be recoverable if we adopted JMG's interpretation's of the provision. JMG's argument depends upon the fact that Section 9.2 expressly mentions attorneys' fees in the first sentence concerning preparation but not the second sentence concerning enforcement. But this is also true for out-of-pocket expenses of counsel. Thus, Jet Midwest International would be precluded from recovering both fees and out-of-pocket expenses of counsel related to enforcing the agreement. Jet Midwest International contends that this essentially would reduce the recoverable enforcement costs and expenses to nothing. JMG responds that Jet Midwest International still could recover "filing fees, service fees, witness fees, copying costs, deposition costs and all manner of costs typically recoverable as costs in federal litigation," but most of these costs qualify as out-of-pocket expenses of counsel, which, as we have explained, would not be recoverable under JMG's interpretation. While it is conceivable that the parties had in mind hypothetical costs incurred by the company and not paid by counsel, it is unlikely that

they would have used the sweeping phrase "all costs and expenses" if they intended to limit reimbursement in that manner. Given the use of the "uncompromising" word "all," we decline to adopt a reading that restricts the recoverable costs and expenses to such a considerable extent.

For these reasons, we reverse the district court's order denying attorneys' fees and remand for consideration of an appropriate award.

_____