# United States Court of Appeals
### For the Eighth Circuit

_____

## No. 21-1795
_____

Jet Midwest International Co., Ltd

*Plaintiff - Appellee*

v.

Jet Midwest Group, LLC; Paul Kraus; Karen Kraus

*Defendant*s

F. Paul Ohadi, in his capacity as trustee and legal representative of the F. Paul Ohadi Trust dated December 15, 1999 and in his individual capacity; F. Paul Ohadi Trust, dated December 15, 1999; Kenneth M. Woolley

*Defendants - Appellants*

Jet Midwest Inc.

*Defendant*

KMW Business Jets; Alta Airlines Holdings

*Defendants - Appellants*

_____

## No. 21-1858
_____

Jet Midwest International Co., Ltd

*Plaintiff - Appellant*

v.

Jet Midwest Group, LLC; Paul Kraus; Karen Kraus

*Defendant*s

F. Paul Ohadi, in his capacity as trustee and legal representative of the F. Paul Ohadi Trust dated December 15, 1999 and in his individual capacity; F. Paul Ohadi Trust, dated December 15, 1999; Kenneth M. Woolley

*Defendants - Appellees*

Jet Midwest Inc.

*Defendant*

KMW Business Jets, LLC; Alta Airlines Holdings, LLC

*Defendants - Appellees*
_____

Appeals from United States District Court
for the Western District of Missouri - St. Joseph
_____

Submitted: September 20, 2023
Filed: February 9, 2024
_____

Before SMITH, Chief Judge, MELLOY and ERICKSON, Circuit Judges.
_____

SMITH, Chief Judge.

F. Paul Ohadi, in his capacity as trustee and legal representative of the F. Paul Ohadi Trust dated December 15, 1999, and in his individual capacity; the F. Paul Ohadi Trust, dated December 15, 1999; Kenneth M. Woolley; KMW Business Jets, LLC; and Alta Airlines Holdings, LLC (collectively, "Ohadi/Woolley defendants") appeal the district court's order awarding attorneys' fees to Jet Midwest International Co., Ltd. (Jet Midwest International) in the amount of $6,565,297.19, plus contractual interest of 14 percent accruing on the date of each invoice at issue. Jet Midwest International cross-appeals, arguing that the district court erred in not awarding all of its requested fees and costs pursuant to a contractual fee-shifting provision. We vacate the award of attorneys' fees and costs and remand for further proceedings consistent with this opinion.

## I. *Background*

In September 2015, Jet Midwest International and Jet Midwest Group, LLC (JMG) entered into a Term Loan Agreement for Jet Midwest International to loan JMG $6.5 million to fund its acquisition of a Boeing 737-700 aircraft. The Term Loan Agreement contained the following fee-shifting provision:

> Borrower [JMG] agrees to pay on demand all costs and expenses in connection with the preparation, execution, delivery, filing, recording, and administration of any of the Loan Documents, including the reasonable fees and out-of-pocket expenses of counsel for Lender [Jet Midwest International], with respect to the items noted above and with respect to advising Lender as to its rights and responsibilities under any of the Loan Documents; provided, however, that Borrower's payment obligations in this sentence shall not exceed, and shall be capped at, $20,000. Borrower agrees to pay on demand all costs and expenses, if any, in connection with the enforcement of any of the Loan Documents.

*Jet Midwest Int'l Co. v. Jet Midwest Grp., LLC*, 932 F.3d 1102, 1105–06 (8th Cir. 2019).[1]

---

[1]"Hong Kong law governs the interpretation of the loan agreement." *Id.* at 1106.

The Term Loan Agreement required JMG to repay the loan within one year. But JMG never repaid any of the principal on the loan. As a result, Jet Midwest International filed the Term Loan Action against JMG. *See Jet Midwest Int'l Co. v. Jet Midwest Grp., LLC*, No. 5:17-cv-06005-FJG (W.D. Mo.). The district court granted summary judgment in favor of Jet Midwest International, concluding that JMG had failed to repay the principal balance of the loan and had failed to pay interest in accordance with the Term Loan Agreement.

Shortly thereafter, Jet Midwest International moved for an order requiring JMG to reimburse Jet Midwest International for attorneys' fees incurred in the Term Loan Action. Although the district court denied the motion, this court reversed on appeal. We concluded that the Term Loan Agreement's "use of the sweeping language '*all* costs and expenses' reflects the parties' intent that JMG would pay Jet Midwest International's attorneys' fees and other costs for enforcing as well as preparing the agreement." *Jet Midwest Int'l*, 932 F.3d at 1106. Thus, Jet Midwest International was entitled to "all" attorneys' fees incurred in "enforcing" the Term Loan Agreement. *Id.* We remanded to the district court "for consideration of an appropriate award." *Id.* at 1107. The district court subsequently awarded Jet Midwest International attorneys' fees in the amount of $823,341.04, plus contractual interest of 14 percent accruing on the date of each invoice at issue.

After the district court awarded summary judgment in the Term Loan Action, Jet Midwest International attempted to collect on the judgment by garnishing JMG's bank accounts, but JMG had no remaining funds to collect. Jet Midwest International then filed the instant Fraudulent Transfer Action under the Missouri Uniform Fraudulent Transfer Act (MUFTA). It alleged that JMG refused to pay the judgment in the Term Loan Action and had fraudulently transferred its assets to the Ohadi/Woolley defendants. The district court conducted a bench trial and entered judgment in Jet Midwest International's favor on all of its causes of action. The

-4-

actions included the following: (1) a cause of action against JMG as the transferor pursuant to the MUFTA (Count I); (2) a cause of action against the Ohadi/Woolley defendants as the transferees under the MUFTA (Count II); (3) a cause of action against all defendants for civil conspiracy (Count III); and a cause of action for declaratory judgment against the Ohadi Trust (Count IV). Ultimately, the district court determined that JMG fraudulently transferred cash and share certificates valued at $41,054,949.67. The district court ordered as follows:

> [M]onetary damages are awarded, *jointly and severally*, against Kenneth M. Woolley, the Ohadi Trust, and F. Paul Ohadi in his capacity as trustee and legal representative of the Ohadi Trust and in his individual capacity, in the following amount:
>
> > (a) $6,500,000.00; plus,
> >
> > (b) $75,833.37 in interest that was due but unpaid as of October 26, 2017; plus,
> >
> > (c) $2,090,326.37 in additional unpaid interest accruing through May 31, 2019; plus,
> >
> > (d) additional interest at a rate of 14% per annum from June 1, 2019 until this award of monetary damages is satisfied; plus,
> >
> > (e) *such additional amounts as may be awarded to Jet Midwest International in fees and costs in Case No. 17-cv-06005*.
>
> But the sum of (a) through (e), above, shall not exceed a maximum total monetary damages award of $41,054,949.67.

R. Doc. 700, at 2 (emphases added).

After entry of judgment in the Fraudulent Transfer Action, Jet Midwest International sought reimbursement of its fees and costs. It requested attorneys' fees and costs in the amount of $8,753,729.59 at an interest rate of 14 percent from the date of each invoice until the award is paid.[2] It argued that it was entitled to such fees pursuant to the district court's order entering judgment in favor of Jet Midwest International and this court's opinion in *Jet Midwest International*, 932 F.3d 1102. The Ohadi/Woolley defendants opposed the motion, arguing that "they were not a party to the Term Loan [A]greement and that [the] Eighth Circuit Order states that [Jet Midwest International] shall recover [its] fees against *JMG*." *Jet Midwest Int'l Co.*, 2021 WL 1397224, at *2. The district court, however, concluded that the Ohadi/Woolley defendants were jointly and severally liable for fees and costs based on its prior holding that the Ohadi/Woolley defendants "violated the [MUFTA] and colluded and conspired with each other in doing so." *Id.* (citing *Trimble v. Pracna*, 51 S.W.3d 481, 500 (Mo. Ct. App. 2001) ("A civil conspiracy is an agreement or understanding between two or more persons to do an unlawful act or use unlawful means to do an otherwise lawful act.")).

After determining that Jet Midwest International was entitled to a fee award, the court addressed the reasonableness of the fee request of $8,753,729.59. Jet Midwest International justified its fee request based on the length of the litigation (two years); the number of defendants (nine prior to bifurcation); "the extraordinary complexity of the fraudulent scheme engaged in by defendants"; and "the nature of the services [counsel] provided, the importance and amount of money involved, the degree of responsibility, [and the] skill and result achieved." *Id.* at *3. It supported

---

[2]"Jet Midwest International note[d] that the lodestar approach produced a slighter higher attorney fee amount ($8,819,216.43), but that [was] due to a 10% discount and certain other discounts applied to some invoices." *Jet Midwest Int'l Co. v. Jet Midwest Grp., LLC*, No. 5:18-cv-06019-FJG, 2021 WL 1397224, at *2 (W.D. Mo. Mar. 30, 2021).Before the district court, Jet Midwest International "only [sought] the lower, discounted amount that was actually invoiced." *Id.*

its fee request with two declarations; "numerous attached exhibits detailing the attorneys who worked on the case, a summary of their backgrounds and what work they performed on this case"; and "a lodestar chart detailing the names of all the timekeepers, the dates they worked on the case, their position, their actual hourly rate, the total hours worked and the total fees for each timekeeper." *Id.* "Of the total [fee] amount, $1,117,791.24 was for costs incurred in connection with the retention of three expert witnesses . . . . [and] $364,748.32 was attributable to other third-party costs, including printing, legal research and court reporting services." *Id.* And its "fee request represent[ed] 13,338.51 hours billed by a total of 53 timekeepers," with four attorneys primarily working on the case. *Id.*

The Ohadi/Woolley defendants opposed the fee request. First, they argued that "Jet Midwest International is only entitled to recover fees from the date judgment is entered and only at the Federal Funds rate, plus 5%." *Id.* at *5. Second, they asserted that Jet Midwest International's "attorneys engaged in block billing and provided vague descriptions" for work performed. *Id.* Third, they maintained that counsel for Jet Midwest International "failed to delegate assignments appropriately and wrongfully billed for administrative tasks." *Id.* With regard to costs, the Ohadi/Woolley defendants argued that Jet Midwest International "included items which are unrecoverable, such as legal research, document processing and beverage service" and requested travel costs that "are excessive and duplicative—such as charging for multiple attorneys attending the same depositions and hearings." *Id.* They also argued that Jet Midwest International's "expert witness fees are not taxable and instead experts are taxed at the same rate as any other witness and entitled to $40/day plus actual expenses." *Id.*

In determining the attorneys' fee award, the district court did not calculate the fees using the lodestar method; instead, it began its analysis by considering seven factors:

(1) the time expended, (2) the nature, character and amount of the services rendered, (3) the nature and importance of the litigation, (4) the degree of responsibility imposed on the attorney, (5) the amount of money involved, (6) the degree of professional ability, skill, and experience called for and used; and (7) the result obtained.

*Id.* at *6 (quoting *Dinosaur Merch. Bank Ltd. v. Bancservices Int'l LLC*, No. 1:19-cv-84-ACL, 2020 WL 3489344 (E.D. Mo. June 26, 2020) (quoting *Weitz Co. v. MH Wash.*, 631 F.3d 510, 528–29 (8th Cir. 2011))). Applying these factors, the district court found that Jet Midwest International was entitled to "a large fee request" "in light of the enormous amount of time expended, the extraordinarily complex nature of the financial transactions at issue, the sheer volume of documents and discovery that the parties engaged in and the amount of fraudulent transfers recovered." *Id.* But the court found that "some hours submitted . . . were 'excessive, redundant or otherwise unnecessary' and that there was some amount of 'overlawyering' involved." *Id.* (quoting *Dinosaur Merch. Bank*, 2020 WL 3489344, at *7). The court declined to "wade through the numerous pages of billing records submitted or attempt a line-by-line adjustment to either the specific tasks billed or the hours charged"; instead, it "exercise[d] its discretion and ma[d]e a percentage reduction." *Id.* It reduced the amount of fees by 25 percent, resulting in a total fee award of $6,565,297.19.

## II. *Discussion*

On appeal, the Ohadi/Woolley defendants argue that the district court erred in awarding attorneys' fees and costs against them because they were not parties to the Term Loan Agreement; as a result, they contend they are not liable to Jet Midwest International for attorneys' fees and costs under the fee-shifting provision of the Term Loan Agreement. They assert that the district court "conflated liability in the Term Loan Action with liability in the MUFTA Action." Appellants' Br. at 8. The Ohadi/Woolley defendants additionally argue that, in calculating the fee award, the district court "failed to apply the correct legal standard and conducted no meaningful

analysis of the reasonableness of fees or the taxability of costs" that Jet Midwest International requested. *Id.* They maintain that the district court "abused its discretion in awarding . . . $6,565,297.19 in conflated attorneys' fees and costs in connection with an action to collect the Term Loan Judgment arising from a $6.5 million loan." *Id.* They further argue that the district court "erroneously assessed the factors relevant to an award of fees" and ignored "thousands of hours of excessive, redundant, or otherwise unnecessary hours billed and egregious overstaffing" in calculating the fees and costs owed to Jet Midwest International. *Id.*

Jet Midwest International cross-appeals, arguing that the district court erroneously granted it "*less* than the total fees requested." Appellee's Br. at 56. Specifically, it argues that the district court erred by applying "*statutory* fee-shifting standards" instead of the fee-shifting provision of the Term Loan Agreement to calculate the fee award. *Id.* Alternatively, it argues that even if the statutory standard is appropriate, it was still entitled to all of its fees because it prevailed on all causes of action and "prov[ed] that all fees were paid and were caused by [the Ohadi defendants'] fraud[] and litigation misconduct." *Id.*

"We review de novo the legal issues related to an award of attorneys' fees, while the actual award is reviewed for an abuse of discretion." *Blackorby v. BNSF Ry. Co.*, 60 F.4th 415, 420 (8th Cir. 2023) (internal quotation marks omitted). We review for an abuse of discretion a district court's award of costs. *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 762 (8th Cir. 2006). A district court abuses its discretion by awarding costs that are not taxable under 28 U.S.C. § 1920. *Johnson Tr. of Operating Eng'rs Loc. #49 Health & Welfare Fund v. Charps Welding & Fabricating, Inc.*, 950 F.3d 510, 527 (8th Cir. 2020); *see also Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 444–45 (1987) (holding district courts are "bound by the limitations" established by § 1920 and that costs not enumerated under that section are not taxable). "A district court abuses its discretion if it bases its ruling on

a clearly erroneous assessment of the evidence or an erroneous view of the law." *Kezhaya v. City of Belle Plaine*, 78 F.4th 1045, 1049 (8th Cir. 2023).

### A. *Entitlement to Attorneys' Fees*[3]

Federal Rule of Civil Procedure 54(d)(2) provides that a party seeking attorneys' fees must "specify the judgment and the statute, rule, or other grounds entitling the movant to the award." Fed. R. Civ. P. 54(d)(2)(B)(ii). In this diversity case, "Missouri substantive law governs whether attorney's fees are available." *S&H Farm Supply, Inc. v. Bad Boy, Inc.*, 25 F.4th 541, 554 (8th Cir. 2022) (quoting *Jo Ann Howard & Assocs., P.C. v. Nat'l City Bank*, 11 F.4th 876, 887 (8th Cir. 2021)). "In awarding attorney's fees, Missouri follows the American Rule, which requires parties to pay their own attorney fees unless *their contract* or *a statute* authorizes otherwise." *Id.* (emphasis added).

---

[3]In its amended judgment finding liability on all of Jet Midwest International's claims, the district court awarded "monetary damages . . . , jointly and severally, against Kenneth M. Woolley, the Ohadi Trust, and F. Paul Ohadi in his capacity as trustee and legal representative of the Ohadi Trust and in his individual capacity, in . . . such additional amounts as may be awarded to Jet Midwest International in *fees and costs* in Case No. 17-cv-06005." R. Doc. 700, at 2 (emphasis added). The Ohadi/Woolley defendants never challenged on appeal the district court's award of such "fees and costs" in that amended judgment. Their failure to challenge this award ends the issue as to whether Jet Midwest International will receive an award of "fees and costs." But the district court did not articulate its *basis* for the award of fees and costs in the amended judgment; instead, it articulated a basis for the award when it entered its order on Jet Midwest International's motion for fees and costs. In its cross-appeal, Jet Midwest International argues that the district court "erred as a matter of law by applying a *statutory* fee-shifting framework rather than a *contractual* fee-shifting framework." Appellee's Br. at 58. Thus, we must address under what basis Jet Midwest International is entitled to an award of "fees and costs."

1. *Contractual Entitlement to Attorneys' Fees*

Jet Midwest International contends that it is *contractually* entitled to attorneys' fees and costs under the fee-shifting provision of the Term Loan Agreement that it entered into with JMG. It reasons that the Ohadi/Woolley defendants "are jointly and severally liable for [JMG's] contractual obligation because they conspired with JMG to defraud [Jet Midwest International] and to breach the Term Loan Agreement by fraudulently transferring to themselves the money belonging to [Jet Midwest International]." Appellee's Reply Br. at 1. We disagree.

In the Term Loan Agreement, "*JMG* agree[d] to pay Jet Midwest International '*all* costs and expenses' for both preparing and *enforcing* the loan agreement." *Jet Midwest Int'l*, 932 F.3d at 1106 (emphases added). "The use of the sweeping language '*all* costs and expenses' reflects the parties' intent that *JMG* would pay Jet Midwest International's *attorneys' fees* and other costs for *enforcing* as well as preparing the agreement." *Id.* (second, third, and fourth emphases added).

As the district court found—and the Ohadi/Woolley defendants concede—"Jet Midwest International brought this [Fraudulent Transfer Action] and the costs associated with it to enforce its *own* judgment in the Term Loan Action." *Jet Midwest Int'l Co.*, 2021 WL 1397224, at *5; Appellants' Br. at 36 (quoting *Jet Midwest Int'l Co.*, 2021 WL 1397224, at *5). Under "the sweeping phrase 'all costs and expenses,'" *Jet Midwest Int'l*, 932 F.3d at 1107, Jet Midwest International would be entitled to attorneys' fees from JMG based on the contract's governing language. *Cf. Residential Funding Co. v. Terrace Mortg. Co.*, 725 F.3d 910, 922 (8th Cir. 2013) (holding the district court correctly relied on contractual language providing for fees "without limitation").

But the Ohadi/Woolley defendants *were not* a party to the Term Loan Agreement; therefore, they were not bound by that agreement. As a result, no

*contractual* provision authorizes an award of attorneys' fees against the Ohadi/Woolley defendants in this Fraudulent Transfer Action.

Nonetheless, Jet Midwest International argues, among other things, that "[a] court may impose joint and several liability in setting [attorneys'] fees." Appellee's Br. at 76 (quoting *Walker v. U.S. Dep't of Hous. & Urb. Dev.*, 99 F.3d 761, 772 (5th Cir. 1996)); *see also Concord Boat Corp. v. Brunswick Corp.*, 309 F.3d 494, 497 (8th Cir. 2002) (citing *Walker* with approval). Although this may be true, there must still be an *underlying statutory or contractual basis* justifying the award of attorneys' fees in the first instance. Here, the Term Loan Agreement does not provide a basis upon which to jointly and severally award attorneys' fees against the Ohadi/Woolley defendants in the Fraudulent Transfer Action.

### 2. *Statutory Entitlement to Attorneys' Fees*

Because no contractual basis exists to justify an award of attorneys' fees against the Ohadi/Woolley defendants in this Fraudulent Transfer Action, we address whether a statutory basis exists. *See S&H Farm Supply, Inc.*, 25 F.4th at 554. The district court concluded that the Ohadi/Woolley defendants were jointly and severally liable for attorneys' fees because they conspired and colluded with JMG to violate the MUFTA. *See Jet Midwest Int'l Co.*, 2021 WL 1397224, at *2 (citing *Trimble*, 51 S.W.3d at 500).

"Courts adhere to state common law rules when assessing the availability of attorney's fees under the [M]UFTA." *Volk Constr. Co. v. Wilmescherr Drusch Roofing Co.*, 58 S.W.3d 897, 901 (Mo. Ct. App. 2001). As explained *supra*, in the absence of a contractual agreement, Missouri requires statutory authorization to justify an award of attorneys' fees. *Id.*

Jet Midwest International brought its claims under the MUFTA. The remedial provision of the MUFTA provides for the following remedies in a creditor's action for relief against a fraudulent transfer:

(1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;

(2) An attachment or other provisional remedy against the asset transferred or other property of the transferee . . . ;

(3) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure,

    (a) An injunction . . . ;

    (b) Appointment of a receiver . . . ; or

    (c) Any other relief the circumstances may require.

Mo. Rev. Stat. § 428.039.

As the Missouri Court of Appeals has recognized, "there is no express statutory authorization . . . for the award of attorney's fees" under MUFTA. *Volk Constr. Co.*, 58 S.W.3d at 901.

### 3. *Special Circumstances Exception*

Jet Midwest International alternatively argues that the district court was justified in awarding attorneys' fees to it "under the 'special circumstances exception to the American Rule, which includes situations where a party is shown to have engaged in intentional misconduct.'" Appellee's Br. at 73 (quoting *Volk Constr. Co.*, 58 S.W.3d at 901); *see also State ex rel. Vescovo v. Clay Cnty.*, 589 S.W.3d 575, 589–90 (Mo. Ct. App. 2019) ("A party's 'intentional misconduct' has . . . been

-13-

deemed a 'special circumstance' supporting an award of fees." (quoting *Klinkerfuss v. Cronin*, 289 S.W.3d 607, 619 (Mo. Ct. App. 2009))).[4]

"Special circumstances . . . are rare, and courts have confined th[is] exception[] to limited fact situations."*Vescovo*, 589 S.W.3d at 589. A Missouri court found special circumstances existed in *Volk Construction Co.*—a MUFTA case. In that case, the Missouri Court of Appeals "upheld an award of attorney's fees under the special-circumstances exception to the American Rule where the defendants engaged in intentional misconduct involving transfers with the intent to hinder, delay, and defraud creditors." *Klinkerfuss*, 289 S.W.3d at 618 (citing *Volk Constr. Co.*, 58 S.W.3d at 901). The trial court had found that after the plaintiff sued the corporation, the defendants created security interests and received accounts receivable owed to the corporation. *Volk Constr. Co.*, 58 S.W.3d at 899. It had also "found that the challenged transactions were done with the *actual intent to hinder, delay and defraud creditors* of the [c]orporation in favor of the [defendants]." *Id.* (emphasis added). Based on its findings, "[t]he trial court therefore concluded that these transfers constituted a fraudulent transfer as to [the corporation's] creditors, including the [plaintiff]" and awarded attorneys' fees to the plaintiff. *Id.* On appeal, the Missouri Court of Appeals acknowledged the lack of any "express statutory authorization or contractual provision for the award of attorney's fees," but it found "the award of attorney's fees . . . justified under the 'special circumstances' exception to the American Rule, which includes situations where a party is shown to have engaged in intentional misconduct." *Id.* at 901. The court cited the trial court's specific finding

---

[4]This court has previously "upheld a fee award based on special circumstances in a case involving causes of action in contract and tort." *Jo Ann Howard & Assocs.*, 11 F.4th at 887 (citing *Kelly v. Golden*, 352 F.3d 344, 352 (8th Cir. 2003)). "No decision of the Missouri Supreme Court has superseded *Kelly*; the Missouri [Supreme Court] [has] assumed without deciding that the exception applies in non-declaratory judgment cases." *Id.* (citing *Trs. of Clayton Terrace Subdiv. v. 6 Clayton Terrace, LLC*, 585 S.W.3d 269, 286 (Mo. 2019) (en banc)).

"that the [defendants] completed the transfers with the actual intent to hinder, delay and defraud creditors of the [c]orporation" and concluded that the record supported this finding. *Id.* The court held that the trial court did not abuse its discretion in awarding attorneys' fees and therefore affirmed the award to the plaintiff. *Id.*; *see also Taylor v. Clark*, 140 S.W.3d 242, 257 (Mo. Ct. App. 2004) ("We agree . . . that cases involving fraudulent transfers allow for the award of both attorney's fees and punitive damages." (citing *Volk Constr. Co.*, 58 S.W.3d at 901)).

Here, the district court did not invoke the special circumstances exception to the American Rule in awarding attorneys' fees to Jet Midwest International. Nonetheless, the court's fact findings support an attorneys' fees award on that basis. *See Thole v. U.S. Bank, Nat'l Ass'n*, 873 F.3d 617, 626 (8th Cir. 2017) ("We may affirm for any reason supported by the record, even if different from the reasons given by the district court." (internal quotation marks omitted)), *aff'd sub nom. Thole*, 140 S. Ct. 1615. As in *Volk Construction Co.*, the district court found that JMG and the Ohadi/Woolley defendants acted with "actual intent to hinder, delay and defraud" Jet Midwest International. 58 S.W.3d at 901. Specifically, the district court found that "JMG transferred the . . . share certificates to the Ohadi Trust in January 2018 . . . with actual intent to hinder, delay and defraud [Jet Midwest] International." *Jet Midwest Int'l Co. v. Jet Midwest Grp., LLC*, No. 5:18-cv-06019-FJG, 2020 WL 4819416, at *66 (W.D. Mo. May 26, 2020), *amended*, No. 5:18-cv-06019-FJG, 2020 WL 13049652 (W.D. Mo. Aug. 6, 2020), *and aff'd*, No. 20-2285, 2023 WL 2507218 (8th Cir. Mar. 15, 2023) (unpublished per curiam). "The sole effect of this transfer was to hinder, delay and defraud Jet Midwest International by preventing Jet Midwest International from satisfying a portion of the Judgment." *Id.* The district court also found that "[b]ecause the sole effect of this transfer was to hinder, delay and defraud [Jet Midwest] International, *Defendants'* intent was fraudulent." *Id.* at *67 (emphasis added). It likewise found that "[w]hen JMG and the Ohadi Trust entered into the SAA [Security Agreement Amendment] . . . , they did so with actual intent to hinder, delay and defraud [Jet Midwest] International," *id.* at *68, that "because the actual effect

-15-

of the SAA was to hinder and delay the enforcement of the Judgment, this must have been intentional," *id.* at *69, and that "[t]he Proposed Foreclosures[5]—like the SAA on which the Proposed Foreclosures purport to be based—are designed to hinder, delay and defraud Jet Midwest International," *id.* at *74. The district court's factual findings support application of the special circumstances exception to justify the award of attorneys' fees to Jet Midwest International.

## B. *Calculation of Attorneys' Fees*

Because the special circumstances exception serves as the basis for an award of attorneys' fees to Jet Midwest International, the district court was required to calculate a reasonable attorneys' fee. *See Jo Ann Howard & Assocs., P.C. v. Cassity*, No. 4:09-cv-01252-ERW, 2020 WL 870987, at *4 (E.D. Mo. Feb. 21, 2020), *aff'd sub nom. Jo Ann Howard & Assocs.*, 11 F.4th 876.

"The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *see also Harrison v. Harris-Stowe State Univ.*, 626 S.W.3d 843, 860 n.5 (Mo. Ct. App. 2021) (stating that "[t]he 'lodestar' is the starting point in determining reasonable attorneys' fees"). "As a general rule, a reasonable hourly rate is the prevailing market rate, that is, 'the ordinary rate for similar work in the community where the case has been litigated.'" *Moysis v. DTG Datanet*, 278 F.3d 819, 828 (8th Cir. 2002) (quoting *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001)). "The court 'has great latitude to determine a reasonable hourly rate because it is intimately familiar with its local bar.'" *Burton v. Nilkanth Pizza Inc.*, 20 F.4th 428, 431 (8th Cir. 2021) (quoting *Childress v. Fox*

---

[5]"On November 29, 2018, the Ohadi Trust and KMW [Business Jets, LLC] simultaneously announced their intent to foreclose (the 'Proposed Foreclosures') on JMG's remaining inventory." *Jet Midwest Int'l Co.*, 2020 WL 4819416, at *34.

*Assocs., LLC*, 932 F.3d 1165, 1172 (8th Cir. 2019)). "When calculating the lodestar, a district court need not accept counsel's submission of hours as conclusive but should exclude from that total those hours that were not reasonably expended on the litigation." *Fires v. Heber Springs Sch. Dist.*, 565 F. App'x 573, 575 (8th Cir. 2014) (unpublished per curiam) (citing *Hensley*, 461 U.S. at 433–34). "Although the district court need not explicitly state which hours it finds reasonable, it must at least calculate the hourly rate and the reasonable number of hours worked." *Vines v. Welspun Pipes Inc.*, 9 F.4th 849, 856 (8th Cir. 2021) (citing *Fires*, 565 F. App'x at 576). "In sum, the court should calculate the reasonable hourly rate and the reasonable number of hours worked [and] use these two variables to calculate the lodestar . . . ." *Burton*, 20 F.4th at 431. "[T]here is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010).[6]

"After calculating a fee award using either the lodestar method . . . , district courts generally evaluate 'the ultimate reasonableness of the award . . . by considering relevant factors . . . .'" *League of Women Voters of Mo. v. Ashcroft*, 5

---

[6]"Both the Supreme Court and this court have explained . . . that the lodestar calculation is usually necessary." *Vines*, 9 F.4th at 856 (citing *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989) (explaining that *Hensley* "directed lower courts to make an initial estimate of reasonable attorney's fees by [calculating the lodestar]" and calling "the lodestar approach . . . the centerpiece of attorney's fee awards"); *H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 259–60 (8th Cir. 1991) ("The approach followed by this circuit requires the calculation of a lodestar figure . . . .")).

We wish to emphasize that the district court is not required to do a line-by-line analysis of voluminous billing records. Rather, the district court is in the best position to determine whether the hours, whether in total or by category, are reasonable given its familiarity with the case and to make the appropriate adjustment.

F.4th 937, 941 (8th Cir. 2021) (second alteration in original) (quoting *In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 977 (8th Cir. 2018)).[7] "Although there is no one methodology for calculating an award of fees, it is important 'for the district court to provide a concise but clear explanation of its reasons for the fee award.'" *Marez v. Saint-Gobain Containers, Inc.*, 688 F.3d 958, 966 (8th Cir. 2012) (quoting *Hensley*, 461 U.S. at 437).

Here, Jet Midwest International did provide the district court with lodestar charts and other information. *See Jet Midwest Int'l Co.*, 2021 WL 1397224, at *3 ("Also included in the exhibits is a lodestar chart detailing the names of all the timekeepers, the dates they worked on the case, their position, their actual hourly rate, the total hours worked and the total fees for each timekeeper."). But the district court never set forth its lodestar calculation prior to considering additional factors in calculating the attorneys' fees award. "Because the record contains no lodestar calculation, we vacate the award of attorneys' fees." *Vines*, 9 F.4th at 857. The district court's consideration of additional factors "should come after the district court calculates the lodestar and has moved on to [adjusting] that number." *Id.*

---

[7]In Missouri, "[o]ther relevant factors in determining the reasonable value and amount of [attorneys'] fees include" the following:

> 1) the rates customarily charged by the attorneys involved in the case and by other attorneys in the community for similar services; 2) the number of hours reasonably expended on the litigation; 3) the nature and character of the services rendered; 4) the degree of professional ability required; 5) the nature and importance of the subject matter; 6) the amount involved or the result obtained; and 7) the vigor of the opposition.

*Berry v. Volkswagen Grp. of Am., Inc.*, 397 S.W.3d 425, 431 (Mo. 2013) (en banc) (quoting *Hill v. City of St. Louis*, 371 S.W.3d 66, 81–82 (Mo. Ct. App. 2012)).

C. *Entitlement to Expenses*

The Ohadi/Woolley defendants argue that the district court abused its discretion in awarding expenses to Jet Midwest International. First, they challenge the taxing of expert fees. They argue that "the taxing of expert fees is strictly limited as a cost under 28 U.S.C. § 1920" and that "[e]xpert fees are generally not part of attorneys' fees either." Appellants' Br. at 40. Furthermore, they argue, Jet Midwest International "failed to provide any basis for the allowance of expert fees against [them], much less the reasonableness of $1,117,791.24 in expert fees" because Jet Midwest International's "experts provided almost no description of the work performed." *Id.* As a result, they maintain that the district court "did not . . . determine if the amount of time was reasonably spent, excessive, or duplicative" or "consider whether 2,794.51 hours spent by expert witnesses was reasonable under the circumstances of this case, or whether their rates were reasonable." *Id.* Second, the Ohadi/Woolley defendants argue that the district court erred in determining "that the remaining $364,748.32 in costs were 'attributable to other third-party costs, including printing, legal research, and court reporting services.'" *Id.* at 41. According to the Ohadi/Woolley defendants, Jet Midwest International "provided no supporting documentation, meaningful descriptions, or other information from which the [c]ourt could have identified the nature of the expenses, the purpose of the expenses, or the necessity or reasonableness of the expenses." *Id.*

Jet Midwest International counters that there is "contractual authorization" under the Term Loan Agreement for an award of costs *against the Ohadi/Woolley defendants*. Appellee's Br. at 96. It also notes that "[j]oint and several liability *for costs* is the general rule unless equity otherwise dictates." *Id.* at 75 (emphasis added) (quoting *Concord*, 309 F.3d at 497).

"[F]ederal courts are bound by the limitations [on expenses] set out in 28 U.S.C. § 1821 and § 1920" in the "[a]bsen[ce] [of] explicit statutory or contractual

-19-

authorization for the taxation of an expense as costs." *Johnson*, 950 F.3d at 527 (internal quotation marks omitted). For the reasons previously stated, we conclude that the Term Loan Agreement cannot serve as the basis for awarding costs against the Ohadi/Woolley defendants. *See supra* Part II.A.1. "Although parties may allocate costs by agreement, [Jet Midwest International] d[id] not provide evidence of an enforceable contract" between it and the Ohadi/Woolley defendants. *Johnson*, 950 F.3d at 527. While the district court was authorized to hold the Ohadi/Woolley defendants jointly and severally liable for costs in the Fraudulent Transfer Action, *see Concord*, 309 F.3d at 497, it could do so under 28 U.S.C. § 1920, not the Term Loan Agreement.

Section 1920 sets forth the "expenses that a federal court may tax as costs against the losing party." *Crawford Fitting Co.*, 482 U.S. at 440. It provides, in relevant part:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;[8]
>
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

---

[8]Section 1821 defines "[t]he witness fee specified in § 1920(3)." *Crawford Fitting Co.*, 482 U.S. at 440 (citing 28 U.S.C. § 1821 (enumerating witness fees and disbursements)).

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

In turn, Federal Rule of Civil Procedure 54(d)(1) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." "[Section] 1920 defines the term 'costs' as used in Rule 54(d). Section 1920 enumerates expenses that a federal court may tax as a cost under the discretionary authority found in Rule 54(d)." *Crawford Fitting Co.*, 482 U.S. at 441–42. Under Rule 54(d), "[a] prevailing party is presumptively entitled to recover all of its costs." *In re Derailment Cases*, 417 F.3d 840, 844 (8th Cir. 2005). "However, such costs must be set out in 28 U.S.C. § 1920 or some other statutory authorization." *Smith v. Tenet Healthsystem SL, Inc.*, 436 F.3d 879, 889 (8th Cir. 2006) (citing *Crawford Fitting Co.*, 482 U.S. at 438). "District courts have substantial discretion in awarding costs under Rule 54(d)." *Id.*

"[A]bsent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920." *Crawford Fitting Co.*, 482 U.S. at 445. "The [MUFTA] does not explicitly authorize the taxation of the expert witness fees as costs, and neither § 1821 nor § 1920 allows them." *Orduno v. Pietrzak*, 932 F.3d 710, 720 (8th Cir. 2019); *see also Johnson*, 950 F.3d at 527 ("Taxing of expert fees is strictly limited."). Although some nontaxable costs "might be awarded as attorney's fees if they are separately billed under the prevailing practice in the local community," "expert witness fees are *generally* not part of attorney's fees." *Johnson*, 950 F.3d at 528 (emphasis added).

-21-

Here, Jet Midwest International joined its request for costs with its attorneys' fee request. It sought $8,753,729.59 at an interest rate of 14 percent per annum from the date of each invoice until the award is paid. Also, Jet Midwest International sought $1,117,791.24 for costs incurred in retaining three expert witnesses: Kenneth Yormark (forensic accounting expert); Joseph DiSalvatore (insolvency expert) and David Tokoph (aviation expert). As *Johnson* explains, these fees "are generally not part of attorney's fees." *Id.* On remand, "the court may determine whether [these nonrecoverable costs] may be awarded as attorney's fees." *Id.*

Jet Midwest International represented to the district court that "$364,748.32 was attributable to other third-party costs, including printing, legal research and court reporting services." *Jet Midwest Int'l Co.*, 2021 WL 1397224, at *3. Jet Midwest International provided substantial documentation to the district court in support of its requests, but the district court offered no analysis of such requests. We remand for the district court to consider to what extent these costs are recoverable under § 1920. *See, e.g.*, 28 U.S.C. § 1920(2)–(3) ("A judge . . . may tax as costs . . . [f]ees or printed or electronically recorded transcripts necessarily obtained for use in the case . . . [and] [f]ees and disbursements for printing and witnesses . . . ."); *Hernandez v. Bridgestone Ams. Tire Operations, LLC*, 831 F.3d 940, 950 (8th Cir. 2016) (per curiam) ("[I]f the prevailing party demonstrates that separately billing for CLR is the 'prevailing practice in a given community' and that such fees are reasonable, the district court may award those costs." (quoting *Missouri v. Jenkins*, 491 U.S. 274, 287 (1989)); *Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 713 F.2d 128, 133–34 (5th Cir. 1983) ("[T]he cost of original depositions is taxable without any factual finding. . . . , and the cost of copies is taxable only if the copies were necessarily obtained for use in the case."); *Favata v. Nat'l Oilwell Varco, LP*, No. 2:12-cv-82, 2014 WL 5822781, at *3 (S.D. Tex. Nov. 10, 2014) ("It is generally recognized that the basic costs of an original deposition transcript and one copy are taxable against the non-prevailing party.").

-22-

### III. *Conclusion*

Accordingly, we vacate the award of attorneys' fees and costs against the Ohadi/Woolley defendants and remand for further proceedings consistent with this opinion.[9]

_____

[9]Our holdings are limited to the Ohadi/Woolley defendants. JMG and Jet Midwest International previously entered a stipulation for partial dismissal of the cross-appeal with respect to JMG in No. 21-1858 regarding attorneys' fees and costs. Our holding does not limit JMG's ultimate responsibility for attorneys' fees and costs under the Term Loan Agreement, as set forth in *Jet Midwest Int'l*, 932 F.3d 1102.