Arthur M. VOGEL, d/b/a Mid–Western
Homes and Truss Co.,
Plaintiff/Appellant,

v.

LAKE TIMBERLINE PROPERTY OWN-
ERS VOLUNTARY ASSOCIATION,
INC., Defendant/Respondent.

No. 52587.

Missouri Court of Appeals,
Eastern District,
Southern Division.

Dec. 22, 1987.

Dennis E. McIntosh, Farmington, for plaintiff/appellant.

David L. Mayhugh, Flat River, for defendant/respondent.

GRIMM, Judge.

In this non-jury case, appellant Arthur M. Vogel obtained a judgment against respondent Lake Timberline Property Owners Association for $3,828.70. Although Vogel's brief contains three points, they basically raise one issue: Whether the trial court erred in finding, as a matter of law, that Count II of plaintiff's petition did not plead sufficient facts to award prejudgment interest. Finding that it did, we reverse and remand for further consideration by the trial court on the issue of prejudgment interest.

The facts of this case extend now over a thirteen year period. In the fall of 1974, Vogel and representatives of the Association entered into an agreement, whereby Vogel was to construct and furnish the trusses for the roof of a 50 × 50 foot club house, as well as apply the plywood decking and shingles. For this, Association was to pay $5,858.70. This agreement was reflected by a document denominated "Purchase Contract," and was on a form furnished by Vogel that had a heading Mid–Western Homes and Truss Co., Inc. The purchase contract was signed Mid–Western Homes, Inc., by A. Vogel with a title of "Pres.", as well as by Arthur E. Gordon,

with a title of "Chairman" on behalf of the Association. At trial, Vogel testified that Mid–Western Homes and Truss Co., Inc., was originally a corporation, but its corporate charter lapsed in 1972 or 1973. Vogel had not taken any steps to have the corporation reinstated, but it continued to use that name and its forms and he held out that the company existed.

Vogel testified that the specified work was completed by May 15, 1975. The Association had made a down payment of $2,000.00, and on May 15, 1975, he sent an invoice to Association, showing a balance due of $3,828.70. That invoice contained a bold-face, heavy black-type statement "Warning Fabricator accepts no liability for immediate or subsequent collapse due to:

1. Mishandling during unloading, storage, or erection.

2. Inccrrect or insufficient bracing, whether temporary or permanent.

Mid–Western Homes & Truss Co.

Bonne Terre, Mo."

Neither that invoice, nor a similar invoice sent June 16, 1975, was paid. Vogel said the price was fair and reasonable.

In June, 1975, Vogel met with representatives of the Association to discuss their complaints about the work. He found that the lines of shingles were not exactly in line, that some of the shingles were cut out of square, and some caulking was still needed. Vogel offered to make corrections, but when one of the Association's representatives told him "I don't give a damn if you ever make the corrections or not," he didn't do them.

On April 2, 1976, "Midwestern Homes & Truss Co." as plaintiff filed a petition to enforce mechanic's lien against the Association. Midwestern's original attorney withdrew six weeks after filing the petition; two other attorneys entered their appearances, and later each withdrew, before present counsel entered his appearance in June, 1984. Defendant also changed attorneys once. On June 5, 1984, eight years after filing the original petition, a first amended petition was filed. It contained two major changes, (1) the plaintiff was shown to be "Arthur M. Vogel, doing business as Midwestern Homes and Truss Company," rather than just "Midwestern Homes and Truss Company," and (2) a second count was added, alleging a claim based on quantum meruit. Eight months later, on February 15, 1985, following the overruling of defendant's objection to plaintiff's motion for leave to amend petition on October 9, 1984, the Association filed its answer to the amended petition; it also, for the first time, filed a counterclaim. The counterclaim sought damages of $7500 because Vogel "provided such defective goods and materials and labor in such an unworkmanlike and negligent manner."

In addition to the facts related earlier, at trial Association presented evidence that "the plywood dipped in between the trusses," which was caused either by bad plywood or by Vogel's failure to cover the plywood to keep it from getting wet, which would cause it to warp. Vogel did not put felt or any other protective covering on the plywood decking, and acknowledged that "it rained continuously" before he got anything down on it. Another witness said it rained eight or nine times on the plywood before the shingles were applied. Association's witness Vernon Clay Bonney, a 48 year-old carpenter/contractor, said that to correct the problem, the existing shingles and plywood would have to be removed, and a new roof installed, at a cost of $4200.00.

This non-jury trial was held on October 23, 1985, almost eleven years after the original agreement was made. The cause was taken under advisement, and each party was granted thirty days to file briefs. Briefs were filed on June 12 and 17, 1986, and judgment was entered June 18, 1986. However, it was later set aside, and an amended judgment was granted November 12, 1986. The court awarded Vogel $3828.70 on Count II (quantum meruit), but denied him judgment on Count I (con-

tract/mechanics lien) and also denied him prejudgment interest. The court also found in favor of Vogel on Association's counterclaim. The Association did not appeal.

In its amended judgment, the court noted that it was proper to award interest in a case based upon quantum meruit, but stated that in order to do so, "all of the facts necessary for such an award must be plead [sic] in the count upon which the party prevails by that party seeking such award"; that "one such fact required to be plead [sic] is the date upon which demand for payment was made"; and that the count, based on quantum meruit, "does not plead the date upon which demand for payment was made." Therefore, the court denied "plaintiff's prayer for prejudgment interest contained" in that count.

In a non-jury case, a decree must be sustained if it is supported by substantial evidence, it is not against the weight of the evidence, and does not erroneously declare or apply the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo.banc 1976). Here, in effect, Vogel alleges that the trial court erred in finding, as a matter of law, that the quantum meruit count did not plead sufficient facts to award prejudgment interest.

In examining Vogel's amended petition, we find that the quantum meruit count contains six numbered paragraphs. After pleading that Vogel provided materials and labor at the Association's request, and that the Association accepted such and is enjoying its benefits, it is alleged that the reasonable value thereof is $5828.70, of which $2000 has been paid, leaving a balance due of $3828.70. The count then concludes as follows:

"6. That demand for payment thereof by the Defendant has been made, but said payment has been refused by the Defendant.

WHEREFORE, on Count II of his First Amended Petition, Plaintiff prays payment in the amount of Three Thousand Eight Hundred Twenty-eight Dollars and Seventy Cents ($3,828.70), plus interest at the legal rate from December 4, 1974, and for his costs herein expended."

■ Before examining Vogel's specific point, reference needs to be made to several legal principles concerning an action in quantum meruit. An action in quantum meruit is one of the forms of an action in assumpsit; assumpsit is the remedy for the enforcement of quasi-contractual obligations. *Laughlin v. Boatmen's National Bank of St. Louis,* 354 Mo. 467, 189 S.W.2d 974, 979 (1945). "Quantum meruit" is defined as "as much as he has deserved", *Williams v. Cass,* 372 S.W.2d 156 (Mo.App. S.D.1963), and is based on the principle that no one should enrich himself unjustly at the expense of another. *Beckemeier v. Baessler,* 270 S.W.2d 782, 787 (Mo.1954). As such, it is an equitable doctrine to avoid an unjust enrichment by one who would otherwise benefit from the labor and materials of another.

Here, the trial court by its judgment found that Vogel should be awarded $3,828.70 as the value for his labor and materials. However, it denied him prejudgment interest for the stated reasons of failure to adequately plead the date upon which demand for payment was made.

■ In examining a similar question, this court, in *Colletta & Sons, Inc. v. R.J. Stephens Drywall and Painting Company, Inc.,* 670 S.W.2d 114, 115 (Mo.App.E.D. 1984), said:

It is first contended that prejudgment interest should not have been awarded because it was not specifically referred to in the counterclaim *except in the prayer.* All of the facts necessary for an award of prejudgment interest were included in the body of the counterclaim and the prayer requested interest. That is sufficient to authorize an award of such interest under § 408.020 RSMo 1982 Supp. (emphasis added).

Here, the body of the petition, in paragraph 6, alleged that a demand for payment has been made. The prayer asked for interest from December 4, 1974. Considered to-

gether, we believe that Vogel sufficiently made a claim for interest. All of the facts necessary for an award of prejudgment interest were included in the pleadings.

■ However, so finding does not dispose of the issue here raised. Vogel, in his amended petition on quantum meruit, prayed for "interest at the legal rate from December 4, 1974." The "Purchase Contract" was dated December 4, 1974, and contains signatures dated December 16, 1974. Vogel's own testimony indicates that the work was not completed until May 15, 1975. Thus, there is no evidence to support an award of interest from December 4, 1974. This does not necessarily defeat an award of interest, because a party is considered to have demanded payment no later than the day when the claim is made by filing pleadings thereon in court. Here, Vogel filed his amended petition on June 5, 1984, and thus demand could be determined to be on that date.

In *Laughlin v. Boatmen's National Bank of St. Louis*, 354 Mo. 467, 189 S.W.2d 974, 979 (1945), in discussing quantum meruit, the court quoted 1 Sutherland, Damages, § 324, p 1016:

> For benefits conferred upon request, or enjoyed under various circumstances which are tantamount to a request, there is a legal duty to make compensation; *this is measured by the standard of reciprocal justice.* The party in whose favor such duty is implied is legally entitled to recover so much as he reasonably deserves. Interest is *in many cases* allowed upon this principle (emphasis added).

■ In determining whether to award interest to Vogel, the trial court may have believed that it could not award interest for the reasons expressed in the judgment. Such reasons were erroneous and the trial court may award interest. On the other hand, the trial court may have denied Vogel interest because the claim based on quantum meruit was not filed until eight years after suit was instituted, the work was not satisfactorily completed, the long delay in the prosecution of this claim, as well as other factors, recognizing that this equitable claim "is measured by the standard of reciprocal justice." *Laughlin, Id.*

189 S.W.2d at 979. Thus, although ordinarily interest in quantum meruit cases is allowed from the day the money becomes due and demand for payment is made, we recognize that peculiar circumstances should allow the trial court to exercise its discretion in an equitable action to determine when, if at all, prejudgment interest should be awarded. The trial court may, but is not required to, find that such circumstances exist here. However, if the Court, in its discretion, awards interest, the rate of interest would be that set forth in § 408.020 RSMo 1986. Of course, Vogel is entitled to interest on the $3828.70 from the date of judgment to date of satisfaction.

The judgment for $3828.70 is affirmed, however we reverse and remand for further consideration by the trial court on the issue of prejudgment interest.

CRIST, J., concurs.

SATZ, C.J., dissents in separate opinion.

SATZ, Chief Judge, dissenting.

I respectfully dissent.

On the present record, I would affirm the judgment of the trial court.