# United States Court of Appeals

### For the Eighth Circuit

_____

No. 25-1033

_____

Jet Midwest International Co., Ltd

*Plaintiff - Appellee*

v.

Jet Midwest Group, LLC; Paul Kraus; Karen Kraus

*Defendant*s

F. Paul Ohadi, in his capacity as trustee and legal representative of the F. Paul Ohadi Trust dated December 15, 1999 and in his individual capacity; F. Paul Ohadi Trust, dated December 15, 1999; Kenneth M. Woolley

*Defendants - Appellants*

Jet Midwest Inc.

*Defendant*

KMW Business Jets, LLC; Alta Airlines Holdings, LLC

*Defendants - Appellants*

_____

No. 25-1034

_____

Jet Midwest International Co., Ltd

*Plaintiff - Appellant*

v.

Jet Midwest Group, LLC; Paul Kraus; Karen Kraus

*Defendant*s

F. Paul Ohadi, in his capacity as trustee and legal representative of the F. Paul Ohadi Trust dated December 15, 1999 and in his individual capacity; F. Paul Ohadi Trust, dated December 15, 1999; Kenneth M. Woolley

*Defendants - Appellees*

Jet Midwest Inc.

*Defendant*

KMW Business Jets, LLC; Alta Airlines Holdings, LLC

*Defendants - Appellees*
_____

No. 25-1306
_____

Jet Midwest International Co., Ltd

*Plaintiff - Appellee*

v.

Jet Midwest Group, LLC; Paul Kraus; Karen Kraus

*Defendant*s

F. Paul Ohadi, in his capacity as trustee and legal representative of the F. Paul Ohadi Trust dated December 15, 1999 and in his individual capacity; F. Paul Ohadi Trust, dated December 15, 1999; Kenneth M. Woolley

*Defendants - Appellants*

-2-

Jet Midwest Inc.

*Defendant*

KMW Business Jets, LLC; Alta Airlines Holdings, LLC

*Defendants - Appellants*
_____

Appeal from United States District Court
for the Western District of Missouri - St. Joseph
_____

Submitted: December 17, 2025
Filed: April 2, 2026
_____

Before GRUENDER, KELLY, and ERICKSON, Circuit Judges.
_____

ERICKSON, Circuit Judge.

After nine years of litigation and nine other appeals related to the breach of a loan agreement, this case is finally nearing an end. The final puzzle piece pertains to awardable attorney's fees and expenses and applicable interest rates. In February 2024, this Court vacated the district court's $6.5 million award of attorney's fees and costs and remanded for further proceedings. Jet Midwest Int'l Co., Ltd. v. Jet Midwest Grp., LLC, 93 F.4th 408 (8th Cir. 2024). On remand, the district court awarded Jet Midwest International Co., Ltd. ("Jet Midwest") $5.8 million in attorney's fees plus prejudgment interest at the rate of 14 percent; expert witness fees in the amount of $1.1 million "as part of attorney's fees;" and costs for printing, legal research, and court reporting services in the amount of $364,748.32.[1] Both sides are unhappy with the district court's decision and have appealed. We affirm

_____

[1]The only part of the award not on appeal is the taxation of costs.

in part, reverse in part, and remand to the district court to enter judgment applying Missouri's statutory prejudgment interest rate.

## I.    BACKGROUND

In September 2015, Jet Midwest agreed to lend Jet Midwest Group, LLC ("JMG") $6.5 million to fund acquisition of a Boeing 737-700 aircraft. When JMG did not repay the loan, Jet Midwest sued for breach of contract. In October 2017, the district court granted summary judgment in favor of Jet Midwest and subsequently denied Jet Midwest's request for attorney's fees. This Court reversed the denial of attorney's fees, Jet Midwest Int'l Co., Ltd v. Jet Midwest Grp., LLC, 932 F.3d 1102 (8th Cir. 2019), and on remand the district court awarded attorney's fees in the amount of $823,341.04 plus contractual interest at the rate of 14 percent. When Jet Midwest attempted to collect on the judgment by garnishing JMG's bank accounts, JMG had no funds. Jet Midwest then filed this Missouri Fraudulent Transfer Act ("MFTUA") suit against F. Paul Ohadi, in his individual capacity and in his capacity as trustee and legal representative of the F. Paul Ohadi Trust; Kenneth M. Woolley; KMW Business Jets, LLC; and Atla Airlines Holdings, LLC (collectively, "Ohadi/Woolley defendants"). Following a four-day bench trial, the district court entered judgment in Jet Midwest's favor on all claims and awarded $6.5 million in money damages plus over $2.1 million in accrued interest plus additional interest at the rate of 14 percent until satisfaction of the judgment. The order set a 45-day deadline for Jet Midwest to file a motion for an award of costs and fees.

Jet Midwest filed its motion, seeking $8.75 million in attorney's fees and costs. Of this amount, $364,748.32 was attributable to third-party costs, such as printing, legal research, and court reporter services, and $1,117,791.24 was for costs incurred in connection with the retention of three expert witnesses. The Ohadi/ Woolley defendants objected to the amount sought, arguing Jet Midwest overstaffed the case. As an example, the Ohadi/Woolley defendants pointed to billing entries related to the deposition of Jet Midwest's corporate representative, noting six

attorneys entered time for "preparing" the witness and three attorneys billed time for attending the deposition (two of whom were partners with billing rates of $700 and $890 per hour). The Ohadi/Woolley defendants also highlighted that eight attorneys (seven from New York) appeared every day at the bench trial.

The district court found some merit to the Ohadi/Woolley defendants' arguments. To account for "overlawyering" and "excessive," "redundant," and "unnecessary" work, the district court reduced Jet Midwest's fee request by 25 percent, awarding just over $6.5 million in attorney's fees and costs. This Court vacated that award because the court's decision did not include a lodestar calculation for the attorney's fees and did not analyze which requested costs were recoverable under 28 U.S.C. § 1920. See Jet Midwest Int'l Co., Ltd., 93 F.4th at 421-23. On remand, Jet Midwest voluntarily reduced its attorney's fees request to $5,852,297.70 but then requested a 1.5x multiplier thereby effectively increasing its request for attorney's fees to $8,778,446.55. With the requested expert costs and other costs remaining the same, Jet Midwest increased its initial request of $8.75 million to over $10.2 million for attorney's fees and costs.

The district court held a hearing on the revised request. The parties elected to present no evidence beyond what was already in the record. Following the arguments, the district court issued a written decision, finding the number of hours requested by Jet Midwest was reasonable considering the complexity of the fraudulent scheme and, except for two attorneys, the requested hourly rates were reasonable. The court declined Jet Midwest's request for application of a 1.5x multiplier, finding counsel had withdrawn its motion for sanctions and had not presented factors different from those already considered in the lodestar calculation to warrant an enhanced fee award. After reducing the hourly rates for the two attorneys, the district court calculated a reasonable fee award of $6,239,208.96. The court reduced this amount to $5,852,297.70—the amount requested by Jet Midwest. While Missouri's statutory prejudgment interest rate is set at nine percent, Mo. Rev. Stat. § 408.020, the court imposed a 14 percent prejudgment interest rate from the date of each invoice. The district court reasoned that the Ohadi/Woolley defendants'

misconduct, which justified application of the special circumstances exception for awarding attorney's fees, also justified application of a 14 percent prejudgment interest rate. The district court also awarded Jet Midwest's request for expert witness fees and costs for printing, legal research, and court reporting services.

The Ohadi/Woolley defendants challenge the award of expert witness fees, the granting of indefinite prejudgment interest, and the rate of prejudgment interest awarded by the district court. Jet Midwest appeals the district court's refusal to apply a multiplier to the attorney's fees calculation.

## II.   DISCUSSION

This Court previously determined there was no statutory or contractual basis to award attorney's fees in this case, but Missouri's special circumstances exception to the American Rule allowed for the recovery of attorney's fees. Jet Midwest Int'l Co., Ltd., 93 F.4th at 418. We review *de novo* legal issues related to an award of attorney's fees and the actual award is reviewed under the deferential abuse of discretion standard. Blackorby v. BNSF Ry. Co., 60 F.4th 415, 420 (8th Cir. 2023). A district court abuses its discretion if its ruling is based on an erroneous view of the law. Kezhaya v. City of Belle Plaine, Minn., 78 F.4th 1045, 1049 (8th Cir. 2023).

### 1.   Amount of Attorney's Fees Award

Jet Midwest challenges the actual award of attorney's fees, asserting the district court legally erred when it excluded evidence contained in its withdrawn sanctions motions and abused its discretion when it failed to consider or overlooked the "law of the case" recounting JMG's and the Ohadi/Woolley defendants' "long and egregious pattern of frauds." In other words, Jet Midwest seeks application of a multiplier as a sanction for the Ohadi/Woolley defendants' misconduct.

A reasonable fee is one that is adequate but does not provide a windfall to the attorneys. Hendrickson v. Branstad, 934 F.2d 158, 162 (8th Cir. 1991) (quoting

Blum v. Stenson, 465 U.S. 886, 897 (1984)).  Because the lodestar calculation is presumptively a reasonable fee, the movant bears the burden of demonstrating an enhancement is necessary to constitute a reasonable fee.  Id.  It is after the district court conducts a lodestar calculation that it may consider additional factors.  Jet Midwest Int'l Co., Ltd., 93 F.4th at 421 (quoting Vines v. Welspun Pipes Inc., 9 F.4th 849, 857 (8th Cir. 2021)).  An enhanced award "must be supported by specific evidence in the record and detailed findings by the lower court."  Hendrickson, 934 F.2d at 162.

The record shows the district court understood Jet Midwest's arguments for application of a multiplier but found the factors Jet Midwest identified—the extent and nature of the fraud, the delay tactics, etc.—were subsumed within the lodestar calculation.  The district court correctly noted that to the extent the Ohadi/Woolley defendants' misconduct led to delays and to more attorney hours being expended, the lodestar calculation accounts for the number of hours billed by the attorneys and staff.  The district court did not err when it rejected Jet Midwest's claim that a multiplier is "part of the lodestar" calculation or that the complexity and egregious nature of a parties' misconduct can be a basis to apply a multiplier.  See Penn. v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986) (stating the complexity of the issues is a factor subsumed in the lodestar calculation and cannot serve as a ground for increasing the fee award).

Jet Midwest's additional contention that the district court overlooked or improperly excluded evidence showing this case calls for an enhanced fee award is unavailing.  Typically, the withdrawal of a claim or order leaves the parties in a position as if the claim had not been brought or the order had not been filed.  See Smith v. Dowden, 47 F.3d 940, 943 (8th Cir. 1995) (concluding the effect of the withdrawal of a claim "renders the withdrawn claim a legal nullity and leaves the parties as if the claim had never been brought"); Sidebottom v. Delo, 46 F.3d 744, 750 (8th Cir. 1995) (holding the effect of the district court's withdrawal of its order was to reinstate the pending motion).  In this unusual situation, the withdrawal notice advised the district court that there was a dispute about whether the evidence

submitted with the sanctions motion may be considered in the attorney's fees determination. The notice stated: Jet Midwest "reserves rights and intends to refer to facts discussed in the Sanctions Motion (and related filings) during oral argument at the hearing on October 11, 2024 at 9:00 am, on the other pending motions (Docket #828 and 815), to which defendants will reserve their rights to object."

At the hearing, Jet Midwest's counsel stated the evidence in the withdrawn motion was "critical to showing why [its] fees were what [they were]" and why that evidence should be part of the lodestar analysis. Opposing counsel emphasized that the parties specifically negotiated for the sanctions motion to be withdrawn, it was not referenced in the bankruptcy settlement agreement, and Jet Midwest was improperly asking for a multiplier to punish or sanction the defendants. The district court excluded the evidence, reasoning the parties specifically negotiated the withdrawal of the motion and the settlement agreement did not preserve use of the evidence for purposes of awarding attorney's fees. Having reviewed the record, we cannot say the district court's resolution of this evidentiary dispute was a clear abuse of discretion. See Walker v. Kane, 885 F.3d 535, 538 (8th Cir. 2018) (stating the exclusion of evidence is reviewed for abuse of discretion and evidentiary rulings are reversed only upon a showing of "clear and prejudicial abuse of discretion").

After this Court vacated the attorney's fees order, Jet Midwest made a strategic decision to reduce its attorney's fees request by $713,000 by voluntarily forgoing reimbursement for certain fees and then asked for the award to be enhanced by an additional $2.9 million through application of a 1.5x multiplier. Tactical decisions, like this one, come with risk that the court might not see an issue the same as counsel. Absent a showing of clear error, the mere disagreement over the appropriate award of attorney's fees does not constitute reversible error. See Cashman v. Allied Prods. Corp., 761 F.2d 1250, 1256 (8th Cir. 1985) (noting this Court will not overturn a district court's attorney's fees award absent a clearly erroneous factual finding or "abuse concerning the discretionary margin involved in its allowance").

The district judge who has presided over the litigation between these parties for almost its entire duration is in the best position to assess a reasonable fee award. The court described the litigation as taking a "tortuous path." In response to an argument made at the hearing, the court noted: "There's nothing typical about this case. Nothing." A review of the record shows the district court considered the appropriate law for awarding attorney's fees, correctly performed and detailed its lodestar calculation, was intimately aware of the facts and litigation history, and explained its reasons for not applying a multiplier to enhance the attorney's fees award. We are unable to find any error or abuse of discretion in the district court's determination. We affirm $5.8 million in attorney's fees, as requested by Jet Midwest and awarded by the district court.

### 2. Expert Witness Fees

The next dispute pertains to Jet Midwest's retention of three expert witnesses—Kenneth Yormark (forensic accounting), Joseph DiSalvatore (insolvency), and David Tokoph (aviation). While the experts undoubtedly assisted counsel in unraveling the fraudulent activity, it is unclear the role they played. In its revised motion, Jet Midwest reiterated that the cost of retaining these three expert witnesses totaled $1,117,791.24 and cited Exhibit B, which consists of 485 pages of statements for professional services and disbursements, invoices, and receipts for travel expenses. Jet Midwest did not break down the request as to each expert or explain the role any of them provided in this litigation.

"[A]ttorney's fees and expert fees are regarded as separate elements of litigation." W. Va. Univ. Hospitals, Inc. v. Casey, 499 U.S. 83, 88 (1991). This Court, in its prior decision, left open the possibility that perhaps some nontaxable costs "might be awarded as attorney's fees if they are separately billed under the prevailing practice in the local community." Jet Midwest Int'l Co., Ltd., 93 F.4th at 423 (quoting Johnson Tr. of Operating Eng'rs Loc. #49 Health & Welfare Fund v. Charps Welding & Fabricating, Inc., 950 F.3d 510, 528 (8th Cir. 2020)). Without examining or analyzing either the nature of the costs or services provided by any of

the experts or the prevailing practice for billing expert fees and expenses, the district court awarded the requested expert fees as part of the attorney's fees award, reasoning Jet Midwest billed these expenses directly to its client and it was the Ohadi/Woolley defendants' actions that forced Jet Midwest to hire expert witnesses.

A review of the materials included in Exhibit B sheds little light on the reasoning behind the billing arrangement for expert services. The invoices for the services of Tokoph stated payment was due on receipt and the bill was addressed to attorney Eric Epstein at the law firm of Pillsbury Winthrop Shaw Pittman LLP in New York. In contrast, the last two lines of each of the bills prepared by Grant Thornton LLP for experts DiSalvatore's and Yormark's services provide:

> *Terms:* As agreed upon
>
> █████████████████

The bills were directed to attorney Geoffrey Sant at the law firm of Pillsbury Winthrop Shaw Pittman LLP in New York. Given the redaction, we are unable to discern the nature of the payment arrangement.

It appears there was some type of negotiated arrangement based on a reference in the law firm's January 30, 2019, invoice listing the disbursement type as "Accounting Fees" on "12/04/18," with the following description: "Payment Agreement re forensic accounting and research consulting services." The Court is unable to find evidence in the record explaining how or why it was decided that expert services would be commingled as a disbursement on the law firm's statement to the client. While it might not be unusual for a law firm to remit payment to an expert, it may be unusual for a law firm to commingle billing for its services with expert expenses in the manner done in this case.

Although the Court noted in its prior opinion that nontaxable costs might be awardable depending on the prevailing practice in the local community, the record is devoid of evidence establishing the prevailing practice for the payment of expert

-10-

witnesses. There is no evidence in the record regarding the prevailing practice in the local community, by national law firms, by the subject matter or case type, nor even an explanation from Jet Midwest why this billing arrangement was done in this case. In short, the record fails to explain (perhaps because of redaction) why the arrangement was made in this case, whether the arrangement has any historical or practice precedent in the local community, the nation or in similar cases with similar subject matter wherever situated. The district court erred when it found that Jet Midwest was entitled to recover a typically nontaxable cost in the form of expert fees simply because the law firm included these costs on its statements to the client.

Further, the billing records and attorney declarations provide scant details about the issues the experts assisted the lawyers with such that we are unable to discern a rationale for including expert fees as part of the attorney's fees award. The district court's broad reasoning for treating the expert fees as part of attorney's fees has few limiting principles and too easily converts a traditional litigation cost into an awardable attorney fee, contravening the narrow and strict construction Missouri has declared courts are to utilize when considering the special circumstances exception. Henry v. Farmers Ins. Co., Inc., 444 S.W.3d 471, 478 (Mo. Ct. App. 2014) (citation omitted). The Missouri Supreme Court has made clear: "In the absence of contract or statute, our courts have rarely found the very unusual circumstances that permit the award of attorneys' fees." David Rankin, Jr. Tech. Inst. v. Boykins, 816 S.W.2d 189, 193 (Mo. 1991) (en banc), overruled on other grounds, Alumax Foils, Inc. v. City of St. Louis, 939 S.W.2d 907, 911 (Mo. 1997) (en banc). And even with a fee-shifting contractual provision, Missouri courts are skeptical about shifting expert witness fees. See, e.g., Architectural Res., Inc. v. Rakey, 912 S.W.2d 676, 679 (Mo. Ct. App. 1995) (finding trial court lacked authority to assess expert witness fees pursuant to contractual provision entitling prevailing party to award "attorney fees, court costs, and other related costs").

This Court's prior determination that special circumstances permitted the award of attorney's fees did not automatically transcend to other litigation costs, such as expert fees. Missouri law does not generally recognize an award of expert

-11-

fees as attorney's fees and Jet Midwest did not satisfy its burden of showing why this case should be treated differently. In its supporting brief following remand, Jet Midwest recognized that Missouri courts award expert fees often as "items of damages." Jet Midwest's general assertion that it "had to hire experts due to Defendants' misconduct" leaves the impression that the services provided by the experts assisted Jet Midwest in gathering information and forming opinions necessary to prove a claim or disprove a defense theory—a common type of litigation cost.

Without more, under the narrow and limited special circumstances exception to the American Rule, the mere act of billing expert witness fees and expenses directly to the client is insufficient to turn an otherwise nontaxable litigation cost into a recoverable fee. Had Jet Midwest offered evidence showing it retained an expert to explain, advise, or consult on a specialized area to assist the lawyers' understanding of a claim or defense, it's possible a different outcome might be reached. On this record, Jet Midwest provided insufficient evidence to satisfy its burden of establishing the expert witness fees it incurred to prosecute its fraudulent transfer claims are recoverable as part of an attorney's fee award. We reverse and vacate the district court's award of expert witness fees and expenses.

### 3.    Applicable Prejudgment Interest Rate

We next consider the parties' dispute about the prejudgment interest rate applicable to the attorney's fees award. In imposing a 14 percent interest rate, the district court reasoned that if the Ohadi/Woolley defendants had not transferred to themselves JMG's funds, then Jet Midwest would have been able to recover the 14 percent rate set forth in the loan agreement. Jet Midwest contends it was within the court's discretion to impose this rate, which is higher than Missouri's statutory prejudgment interest rate. The Ohadi/Woolley defendants assert prejudgment interest should not have been awarded at all because the district court first awarded attorney's fees in 2020, so the federal postjudgment interest rate displaces any

prejudgment award.  If prejudgment interest is awarded, the Ohadi/Woolley defendant believe Missouri's statutory rate of nine percent applies.

"In a diversity case the question of prejudgment interest is a substantive one, controlled by state law." Emmenegger v. Bull Moose Tube Co., 324 F.3d 616, 624 (8th Cir. 2003).  Generally, Missouri courts award prejudgment interest if three elements are satisfied: (1) the expenses are due and payable; (2) the claim is liquidated or the amount of the claim is reasonably ascertainable; and (3) the obligee has made a demand on the obligor for the amount due.  Barkley, Inc. v. Gabriel Bros., Inc., 829 F.3d 1030, 1039 (8th Cir. 2016) (quoting Jablonski v. Barton Mut. Ins. Co., 291 S.W.3d 345, 350 (Mo. Ct. App. 2009)).  We review *de novo* the right to prejudgment interest under Missouri law.  Id. (citation omitted).

In this fraudulent transfer action, Jet Midwest asserted claims under MUFTA, see Mo. Rev. Stat. §§ 428.005-428.059, and civil conspiracy.  MUFTA created a statutory cause of action that provides equitable remedies.  Riegel v. Jungerman, 597 S.W.3d 695, 703 (Mo. Ct. App. 2019).  Since MUFTA makes available legal remedies for fraudulent transfers, "a fraudulent transfer claim in Missouri appears to be a cause of action in law, as well as in equity."  RehabCare Grp. East, Inc. v. Stratford Health Care Props., LLC, Case No. 14-0886-CV-W-FJG, 2016 WL 11469771, *6 (W.D. Mo. Feb. 8, 2016).  Under Missouri law, a fraudulent transfer might be a tortious act.  Id.

To determine the applicable prejudgment interest rate, we need not resolve whether this action sounds in equity or in law.  Even if in equity, Missouri courts have decided the prejudgment interest rate that can be imposed is the statutory rate:

> In equitable actions, the determination of whether to award prejudgment interest is left to the discretion of the trial judge.  When a claimant seeks an equitable remedy, the trial court may be guided by equitable principles of fairness and justice when determining whether to award prejudgment interest.  If the trial court, in its discretion, awards

prejudgment interest in an equitable action, the rate of interest should be that in section 408.020.

Jo Ann Howard & Assocs., P.C. v. Cassity, Case No. 4:09CR01252 ERW, 2018 WL 6067294, * 8 (E.D. Mo. Nov. 20, 2018) (quoting Health Care Found. of Greater Kansas City v. HM Acquisition, LLC, 507 S.W.3d 646, 668 (Mo. Ct. App. 2017)). Here, the district court exercised its discretion to award prejudgment interest. And we find no abuse of discretion in that decision. Under Missouri law, however, once prejudgment interest is awarded, the rate the court may impose is nine percent, as provided in Mo. Rev. Stat. § 408.020.

Jet Midwest merges the issue of discretion to award prejudgment interest with the separate issue of the rate that can be imposed, claiming this Court's decision in Jo Ann Howard & Assocs., P.C. v. Nat'l City Bank, 11 F.4th 876 (8th Cir. 2021), and the Missouri appellate decisions in Knopke v. Knopke, 837 S.W.2d 907 (Mo. Ct. App. 1992), and Taylor-McDonald v. Taylor, 245 S.W.3d 867 (Mo. Ct. App. 2008), "are dispositive." Both this Court's decision in Jo Ann Howard, 11 F.4th at 885, and the Missouri Court of Appeals decision in Taylor-McDonald, 245 S.W.3d at 878-79, addressed whether, in equity, the claim must be readily ascertainable to award prejudgment interest. In the other Missouri appellate court case relied on by Jet Midwest, Knopke, the court stated:

> We do not hold that a trial court is limited in every equity case to the statutory rate of legal interest, nor to simple interest. The trial court in an equity case has discretion, in certain cases, both as to rate of interest and as to compound as opposed to simple interest.

837 S.W.2d at 915. The court did not support these statements with a citation, nor did it explain or offer any guidance as to when or in what case it is permissible to impose a rate different than the statutory rate. Instead, the court concluded by stating it was unable to find the district court abused its discretion when it imposed the legal rate specified in Mo. Rev. Stat. § 408.02. Id. at 916.

We find more persuasive the more recent Missouri case that expressly held that the rate for prejudgment interest, even in a case of equity, is the rate provided in Mo. Stat. § 408.020. Health Care Found. of Greater Kansas City, 507 S.W.3d at 668 (citing Vogel v. Lake Timberline Prop. Owners Voluntary Ass'n, Inc., 741 S.W.2d 869, 872 (Mo. Ct. App. 1987)). Prejudgment interest is an issue controlled by state law and we are not free to substitute our own opinion. Jet Midwest is entitled to prejudgment interest at the rate of nine percent. See id.; Mo. Stat. § 408.020. We reverse the district court's order imposing a 14 percent prejudgment interest rate and direct the rate be reduced to nine percent for prejudgment interest.

4.     Accrual Date for Prejudgment Interest

Jet Midwest submitted statements and invoices for services rendered from June 2018, through May 2020. The district court found that Jet Midwest is entitled to prejudgment interest from the date of each invoice. The Ohadi/Woolley defendants contend the district court erred because the original judgment awarding attorney's fees in an amount to be determined ceased the availability of prejudgment interest and turned it into a claim for postjudgment interest, and, alternatively, the awarded fees were not ascertainable until they were calculated, limiting the time period for which Jet Midwest would be entitled to interest.

"[T]he key purpose of prejudgment interest under Missouri law [is] 'to compensate for the failure to pay a liquidated amount when due.'" Emmenegger, 324 at F.3d at 625 (quoting Prof'l Ins. Managers, Inc. v. RCA Mut. Ins. Co., 884 S.W.2d 332, 338 (Mo. Ct. App. 1994)). Contrary to the Ohadi/Woolley defendants' claim, under Missouri law, a party is entitled to prejudgment interest on an unliquidated claim for attorney's fees. See Farmland Indus., Inc. v. Frazier-Parrott Commodities, 111 F.3d 588, 593 (8th Cir. 1997); Jo Ann Howard & Assocs., 11 F.4th at 885 ("Although the lack of a readily ascertainable amount could be a factor in equity that supports a decision to forgo an award of prejudgment interest, our best prediction of Missouri law is that there is no such hard-and-fast prerequisite for prejudgment interest.").

-15-

The Ohadi/Woolley defendants do not challenge the district court's determination that the appropriate accrual date for prejudgment interest is the invoice date. In their opening brief, the Ohadi/Woolley defendants argue the district court erred "in awarding any prejudgment interest at all," but "if any prejudgment interest were appropriate," the court "appl[ied] the wrong prejudgment interest rate." Blue Br. p. 33. Jet Midwest asserted the defendants "concede the starting date for prejudgment interest is the invoice date." Red Br. p. 48, n. 7. The Ohadi/Woolley defendants did not refute this assertion. In reply, the Ohadi/Woolley defendants continued with their all-or-nothing approach, arguing Missouri law precludes awarding prejudgment interest. Yellow Br. pp. 31-39. In conclusion, the Ohadi/Woolley defendants confirmed their requests for relief with regard to prejudgment interest, requesting "this Court vacate the district court's . . . award of prejudgment interest [and] direct the court to award only postjudgment interest accruing from its May 26, 2020, order[.]" Having not contested the accrual date for prejudgment interest, the issue is not before us. We affirm the district court's decision to award prejudgment interest but, for the reasons stated in the preceding section, reverse the interest rate awarded.

5.    Postjudgment Interest

The district court did not consider whether a judgment had been entered triggering the federal postjudgment interest statute. While state law governs the award of prejudgment interest, federal law governs postjudgment interest. Weitz Co., Inc. v. Mo-Kan Carpet, Inc., 723 F.2d 1382, 1385 (8th Cir. 1983). The federal statute calculates interest at a prescribed floating rate on "any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a).

The district court entered many orders but only two judgments—a judgment on May 27, 2020, and an amended judgment on August 6, 2020. On May 26, 2020, the district court made findings of facts and concluded Jet Midwest was entitled to judgment in its favor. The next day judgment was entered, which also ordered that Jet Midwest "shall be awarded their costs and fees from litigating this proceeding."

-16-

Amended findings and an amended judgment were entered on August 6, 2020. The amended judgment fixed the amount of damages at $6.5 million plus interest, but not to exceed $41,054,949.67. It again ordered that Jet Midwest "shall be awarded at a later date, its costs and fees from litigating this proceeding." Finally, the district court certified the judgment as final under Federal Rule of Civil Procedure 54(b). The Ohadi/Woolley defendants appealed. On March 15, 2023, this Court affirmed pursuant to 8th Cir. R. 47B. Jet Midwest Int'l Co., Ltd. v. Jet Midwest Grp., LLC, No. 20-2285, 2023 WL 2507218 (8th Cir. Mar. 2023) (unpublished per curiam).

Section 1961(a) is triggered by the entry of a "money judgment." The statute does not require a "final judgment." ResCap Liquidating Trust v. Primary Residential Mortg., Inc., 59 F.4th 905, 923 (8th Cir. 2023). "The phrase 'any money judgment' in section 1961(a) is construed as including a judgment awarding attorney's fees." Jenkins by Agyei v. State of Mo., 931 F.2d 1273, 1275 (8th Cir. 1991). This Court has determined that the date postjudgment interest begins to accrue on attorney's fees is "the date the court recognizes the right to such fees in a judgment." Id.

Here, the district court recognized Jet Midwest's right to attorney's fees in its May 27, 2020, judgment. The district court, however, did not enter a money judgment until August 6, 2020. That judgment reiterated Jet Midwest's right to recover attorney's fees. Thus, on August 6, 2020, the district court both entered a money judgment and recognized Jet Midwest's right to recover attorney's fees. The district court erred when it did not apply the federal postjudgment interest rate to calculate interest after August 6, 2020. See ResCap Liquidating Trust, 59 F.4th at 923 (determining the federal interest rate applies after a money judgment is entered, despite quantification of attorney's fees and costs being outstanding).

## III. CONCLUSION

For the foregoing reasons, we affirm in part, reverse in part, and remand to the district court. We affirm the district court's award of attorney's fees. We reverse

-17-

and vacate the district court's award of expert fees as part of attorney's fees.  We reverse the interest rate used to calculate prejudgment interest and remand for the entry of judgment applying Missouri's statutory prejudgment interest rate of nine percent.  The applicable interest rate after August 6, 2020, is governed by the rate set forth in 28 U.S.C. § 1961(a). The motion of Jet Midwest International Co., Ltd to take judicial notice is granted.

_____